### LUTHER A. MANLY v. M. B. ABERNATHY.

(Filed 11 November, 1914.)

1. **Interpretation of Statutes—Motor Cars—Negligence—Intersecting Streets.**
   Public Laws 1913, ch. 107, providing, among other things, that a person operating a motor vehicle, when approaching an intersecting highway or traversing it, shall have the car under control and operate it at a speed not exceeding 7 miles an hour, having regard to the traffic then on the highway and the safety of the public, is construed with reference to its subject-matter and the purpose and intent of the act gathered from the language employed, and it is held that the word "intersecting highways" includes all space made by the junction of frequented streets of a town, though one of the streets enters the other without crossing or going beyond it.

2. **Same—Trials—Instructions.**
   It appearing in this case that the defendant knocked the plaintiff down and injured him, while the former was running his motor vehicle at an excessive speed upon a public and frequented street that ran into but did not cross another, which he was approaching, without slowing down or giving the signal required by section 1, chapter 107, Public Laws 1913, it was error for the trial judge to charge the jury that the second section of said chapter did not apply to the facts of the case, upon the ground that to come within the meaning of the statute the defendant must have been running his car on a street which crossed beyond the other street he was approaching in order for the streets to have been intersecting each other.

APPEAL by plaintiff from *Devin, J.,* at Spring Term, 1914, of ROCK-INGHAM.

*Johnston, Ivie & Dalton for plaintiff.*
*P. W. Glidewell and C. O. McMichael for defendant.*

WALKER, J.  This action was brought to recover damages for injuries sustained by plaintiff as the result of the negligent running and operation of defendant's automobile, whereby he was knocked down by the said car in a public street, where he had the right to be, and severely injured. There seems to be not the slightest room for doubt, if the evidence of plaintiff is true, that defendant negligently ran his car at an excessive rate of speed, 45 miles the hour, in a much used and frequented public thoroughfare, and without giving any signal of his approach.  The case turns upon the applicability of Public Laws 1913, ch. 107, at p. 188, which reads as follows: "(1) When approaching a pedestrian who is upon the traveled part of any highway, and not upon a sidewalk, and upon approaching any intersecting highway or a curve, or a corner in a highway where the operator's view is obstructed, every person operating a motor vehicle shall slow down and give a timely signal with his bell,

horn, or other device for signaling"; and (2) when approaching an intersecting highway, a bridge, dam, sharp curve, or steep descent, and also in traversing such intersecting highway, bridge, dam, curve, or descent, a person operating a motor vehicle shall have it under control and operate it at such speed, not to exceed 7 miles an hour, having regard to the traffic then on such highway and the safety of the public. The court charged that the second branch of the statute did not apply to the facts of this case, and defendant (appellee), in his well prepared brief, states that the instruction was given to the jury "because the accident did not take place at an *intersection* of a highway, but in front of Walker & Co.'s mill," which is not at a place, as he contends, where one street enters into or connects with or crosses another street, and for the further reason that "West Market Street enters into a street which runs by Walker & Co.'s mills, but said West Market Street does not *cross* the other (Settle) street, and therefore is not an intersecting street within the meaning of the statute. The street, which is not given a name by defendant in his brief, and which joined with West Market Street, is known as Settle Street (by plaintiff's own evidence, Record, p. 8). Plaintiff excepted to the ruling of the court upon the statute and appealed from the judgment.

Defendant testified in his own behalf as follows: "I came out of Settle Street in front of the mill. There was nothing, I think, to obstruct my view of Manly. There were several wagons there, and I think a wagon was coming in from the other street, and there were several people standing there. . . . Manly was struck about the middle of (the place) where West Market Street would cross Settle Street, if it (Market Street) continued on and across Settle Street." So that there was some evidence, proceeding from the defendant himself, who testified in his own behalf, that plaintiff was knocked down and injured at the intersection of two streets, provided it is not necessary that one street should cross another in order for it to be said that the former intersects the latter, within the meaning of the law and the intent of its makers, for the latter should be added, as every law, when ambiguously worded, should be construed according to its true intent, to be gathered, of course, from its language.

Webster defines the word "intersect" as follows: "To cut into or between," and, secondly, "to cut or cross mutually." The ordinary meaning may be "to cross," but its true sense in the particular statute or writing must be ascertained by a full reference to the context in which the word appears. It would violate the elementary rule of construction not to construe it in that way, for we are told that the words in a statute are to be construed with reference to its subject-matter and the objects sought to be attained (23 A. and E. Enc., 322; *Brewer v. Blougher,* 14

Pet. (U. S.), 178, 10 L. Ed., 408; Sedg. St. and Const. Law, 359), as well as the legislative purpose in enacting it; and its language should receive that construction which will render it harmonious with that purpose, rather than that which will defeat it (*id.,* 319; *Taylor v. Washington County,* 67 Ind., 383; *People v. Lacombe,* 99 N. Y., 43). When uncertain, its general intent, as gathered from the statute, furnishes a key by which its ambiguities may be solved, and thus its words given that meaning which will harmonize with that intent. Suth. St. Const., secs. 218, 219. Conditions with reference to the subject-matter of the act, which it is apparent from its context it was necessary to provide for, may also be considered in ascertaining what is meant by that which is apparently ambiguous. *People v. Lacombe, supra;* 17 A. and E. Enc. (2 Ed.), p. 33. In *Calhoun Gold Mining Co. v. Ajax G. M. Co.,* 59 Pac. Rep. (Colo.), 607, the Court said: "It is evident from the provisions of section 2322 that the intent of Congress was to give to the locator of a claim, to which no adverse right had attached, every vein apexing within the surface boundaries of his location, unless its intent is negatived by section 2336. The words 'intersect' and 'cross,' as used in this section, are not strictly synonymous, and in using both it must be presumed it was intended to provide for different conditions. Veins might *intersect,* either on their strike or dip, and not cross. In that event it was necessary to provide which location should have the ore at the space of *intersection,* and it was declared that the prior location should have the ore within that space. In case they crossed, then a further provision was necessary, and it was provided that the junior locator should have the right of way through the space of *intersection,* for the convenient working of his mine." We are clearly of the opinion that the Legislature intended to use the word in the sense of "joining" or "touching," or coming in contact with, or "entering into," and did not intend that the word "intersect" should be so restricted in its meaning as not to protect pedestrians and other persons using a public street, at a point or space where another street comes into it, although it does not cross it. We should, therefore, give the word its broader meaning, which will include all space made by the junction of streets, where accidents are just as likely to occur as where the two streets cross each other. "Like reason doth make like law *(Ubi eadem ratio, ibi idem lex),"* and "then is the law most worthy of approval when it is consonant to reason." Broom's Legal Maxims (6 Am. Ed.), pp. 122, 123, and cases in note, which illustrate the maxim and show the nature and extent of its application. We have seen that the word "intersect" is defined by Dr. Webster, "to cut into one another," and also "to meet and cross each other," and an illustration of the latter meaning of the term is found in the intersection of any two lines, or any two diameters of a circle at its center; but the latter is not

its only signification, as the former part of the definition is to be taken into account and given its proper weight in the solution of the disputed question. . "To cut into" does not necessarily mean to divide by crossing between two objects, but may rightly be construed as entering into, but not passing beyond; and as thus reasonably understood, it embraces the open space or place made by the entrance of Settle Street into the larger street known as West Market, just as a tributary enters or flows into the main stream without crossing it, the point of confluence being that of the intersection of the two streams.

Those who handle these machines, which are highly dangerous if driven rapidly, especially along a crowded thoroughfare, and more especially when turning at the angle of two intersecting streets or roads, should strictly obey the law and exercise that degree of care generally which is commensurate with the great hazard produced by a failure to do so. They should hold their cars well in hand and give timely signals at points where people should reasonably be expected to be and where they have the right to be. But these questions may be postponed for fuller consideration hereafter, as our ruling disposes of the case, and the other exceptions presenting them may not arise again.

We, therefore, conclude that the learned judge erred in his interpretation of the statute, which requires that a new jury be called to hear the case.

New trial.