Eunice Truitt Butler, Administratrix of the Estate of Owen Isom Truitt, Deceased, Appellee, v. Illinois Highway Transportation Company, Appellant.

Gen. No. 8,501.

Opinion filed May 21, 1932.

BARNABAS F. SEARS and MICHEL & BARNES, for appellant.

E. V. CHAMPION, for appellee.

MR. JUSTICE BALDWIN delivered the opinion of the court.

On July 13, 1929, Owen Truitt, a Methodist preacher of Roseville, Illinois, was riding with his wife in his

automobile, which he was driving, on Route No. 9 of a hard road system south and east of Peoria. As Route No. 9 intersects with Route No. 24 there is what is commonly called a "Y," one branch turns to the right and travels over No. 24 to Peoria, the other branch turns to the left and travels over No. 24 to Pekin.

As Truitt was driving his car, he turned to the left into the intersection with Route 24 and as he was in the intersection with his car across the black line in the center of Route 24, he was struck by one of the defendant's busses which weighed about 15,000 pounds.

The evidence shows that Truitt's car was struck in the center of the side and carried diagonally northwest on the hard road for a distance of about 50 feet and then into the railing on the west side of Route 24 and broke off four or five posts of this railing. Truitt and his wife were both killed by this collision.

There is some dispute in the evidence relative to the speed at which the deceased was driving, and also as to the speed the bus was being driven. Some witnesses put the speed of Truitt's car at 40 miles per hour, others at 20 to 25 miles per hour. Some witnesses fix the speed of the bus at 45 to 50 miles per hour, and others at 25 to 30 miles per hour. The evidence in this case on this point is the same as in all automobile accidents, the witnesses varying in their opinions relative to the speed.

There is some discrepancy as to where Truitt drove his car as he started to drive into the intersection of Route 9 with Route 24, but we think it is a fair inference from all of the evidence that up until the time that he saw his imminent danger of colliding with the bus, he was driving his car at an ordinary and reasonable rate of speed and the place where cars ordinarily travel at such an intersection as this.

The main contention in this case is whether the left branch of Route 9 as it turned to the left to go towards

Pekin, is a part of Route 9 and a part of the hard road system as designated by the statutes as Routes 1 to 47. If we say that this is a part of Route 9 and the State had not put up signs designating which traffic should have the right of way at this intersection, then a car coming from the east over this branch of No. 9 would have the right of way over one coming from the south going towards the City of Peoria, and in this particular case Reverend Truitt would have the right of way over the bus of the defendant.

Appellant earnestly insists that the road to the north has been designated by the State Highway Department as Route 9 and, therefore, the branch to the left is no part of Route 9. The photograph introduced in evidence, defendant's Exhibit 4, shows a sign erected by the State Highway Department directing traffic over Route 9 to Canton as indicating that the right-hand branch of this road would be termed Route 9. However, defendant's Exhibit 3, which is taken from the south and shows the view of Route 24 as it extends north and also where the road turns to the east, shows a sign indicating that the branch turning to the right is designated twice as Route 9. The witness Farrer, an engineer connected with the Highway Department with headquarters at Peoria, Illinois, testified that this "Y," including the branch to the left, was built as a part of the hard road system of Route 9. (Abst. p. 31.)

Plaintiff, being a daughter of the deceased, as administratrix of the estate of Owen Truitt, brought a suit under the Injuries Act, Cahill's St. ch. 70, ¶ 1 et seq., in the circuit court of Peoria county for damages, alleging that by the negligent operation of the bus of the defendant company through its agent, Truitt was killed. A trial was had and the jury found a verdict in favor of the plaintiff, assessed the damages at $10,000 and at the request of defendant brought in a

special finding of fact that the plaintiff's intestate, at the time of and prior to the collision, was in the exercise of due care and caution for his own safety. A motion for a new trial was made which was overruled and judgment was rendered on the verdict and an appeal was taken to this court.

It is the contention of appellant, as noted in its brief: first, that the court erred in refusing to instruct the jury to find the defendant "not guilty"; second, that the court erred in giving to the jury the plaintiff's third given instruction; third, that the special finding of fact and verdict are against the manifest weight of the evidence.

The declaration consists of three counts known as the first, third and fourth. The first count charges general negligence, the third charges a statutory breach in that the bus was operated at a high and dangerous rate of speed and the fourth count charges statutory negligence on the part of defendant in that defendant did not yield the right of way to appellee's intestate as appellee's intestate drove over Route No. 9 and as he approached and came to and upon the intersection of Routes 9 and 24, etc.

Proper proof of the age of the deceased, his condition of health, the nature and extent of his family and dependents and of the yearly income of the deceased, were made and no question was raised in the record with reference to these facts.

The main question as we take it for our decision is, whether the place where the accident occurred, being the place where the south arm or "Y" of Route 9 joins or cuts into Route 24, is within the meaning of the Illinois statutes which refer to intersecting highways and the rights of people using it at such intersections.

The Illinois statutes effective (although amended since), at the time of this accident being Cahill's St. ch. 95a, ¶ 34; chapter 121, Smith-Hurd Revised Stat-

utes, 1931, paragraph 234, applies, and upon its interpretation as applied to the facts the decision rests. The first paragraph of the statute provides that motor vehicles traveling upon the public highway shall give the right of way to vehicles approaching along intersecting highways from the right and shall have the right of way over those approaching from the left. Paragraph 2 provides that motor vehicles entering upon or crossing a highway designated as Routes 1 to 46 upon which latter road has been constructed a durable, hard surfaced road, shall come to a full stop before driving on the paved portions of said road and shall give the right of way to vehicles upon said hard road, regardless of direction. This section further provides that the last above portion does not apply to the intersection of two of said hard, durable surfaced roads known as 1 to 46 inclusive and further provides that at the intersection of two hard, durable surfaced roads, being routes 1 to 46, as mentioned in the statute, the Department of Public Works and Buildings may prescribe such traffic regulations relating to the right of way and prescribe stops as traffic conditions, as in the discretion of the department, warrant, and that if the Highway Department does prescribe traffic regulations at the intersection of two such hard surfaced, durable roads, appropriate signs or warning lights shall be erected to give notice of any such traffic regulations.

Routes 9 and 24, respectively, at this point, were hard surfaced State aid roads and a part of the routes designated as 1 to 46 inclusive, in Cahill's St. ch. 95a, ¶ 34; paragraph 234 of chapter 121, Smith-Hurd Revised Statutes.

It was also proven on the trial and no objection made thereto, that the State Highway Department at or before the time of the accident in question, had not prescribed traffic regulations relating to the right of

way nor established any boulevard stops or signs or designated either highway as a stop or through highway at the place where Routes 9 and 24 join at this point.

It is contended by appellee that where two such hard surfaced roads join, being any of the roads designated as Routes 1 to 46 inclusive, the Highway Department may assume jurisdiction in reference to traffic regulations and in the event that they. fail to do so, then the first section of the statute, Cahill's St. ch. 95a, ¶ 34, which provides that motor vehicles shall give the right of way to vehicles approaching such intersecting highways from the right and shall have the right of way over those approaching from the left, shall control, and with this contention we agree.

Appellee's intestate, with his wife, was driving in a generally westerly direction on Route 9 which is a hard surfaced State aid road, toward and upon the joining of said Route 9 with another hard surfaced State aid road known as Route 24. Route 24 ran in a north and south direction from Pekin to Peoria, Route, 9, running in a westerly direction, approached Route 24 from the east and at a distance of approximately 200 feet from Route 24, Route 9 divides into two branches or "Y's," one arm of the "Y" going to the right and joining Route 24 in the form of a gradual curve, the other arm of the "Y" going to the left and in a gradual curve joining Route 24. It should be observed that Route 9 also leaves Route 24 at a point further north and continues on in a westerly direction to the west side of the State.

It is common knowledge that in the early days of hard road building in Illinois, where two such roads as these came together in the general plan, the joining of them was usually at right angles but experience gathered from the use of the roads taught those intrusted with the duty of planning further construction

that the convenience and safety of persons using the road would be greatly subserved at such places by constructing ''Y'' connections such as obtained at this point instead of continuing constructing said roads where they intersect, at right angles. This has greatly facilitated, from a safety standpoint, the use of the hard roads at such points and is now the accepted form of intersecting highways in this State.

Appellee's intestate, as he traveled over Route 9 in a westerly direction and approached Route 24, took the left or south arm of the ''Y'' at the point where it joins with Route 24 and had just entered into and upon the intersection of the south arm of the ''Y'' of Route 9 and Route 24, when his car was struck by the defendant's bus which was approaching from the south and on the left of appellee's intestate.

The evidence shows that the car driven by the deceased was struck in the center of its left side and was pushed over to the northwest. Defendant's bus was about 27 to 30 feet long with a gross weight of 15,250 pounds; was coming on its right side of the road on Route 24 and going in a northerly direction. The evidence shows that neither the car driven by the deceased nor the bus driven by defendant's driver stopped prior to the time of the collision and the collision occurred on Route 24 where the south arm of the ''Y'' of Route 9 comes into and joins Route 24. The evidence further shows that the cars came together at a time when decedent's car was crossing the black line or the center of Route 24. There is evidence in the record to the effect that the driver of the bus, before the cars came together, swerved the bus to the left. Under these circumstances each of the contending parties claim that each had the right of way respectively over the other. If deceased had the right of way, then defendant was at fault and if defendant had the right of way, the deceased was guilty of con-

tributory negligence and barred in this action, for it is conceded by all that the failure to stop was the proximate cause of the accident.

There is considerable dispute in the record as has already been noted, as to the speed of the respective vehicles and also more or less contention as to exactly where deceased's car came onto Route 24, but in the view we take of this record, both cars being within the legal prima facie speed limit, it does not make very much difference at what speed the respective cars were proceeding on their way. A fair review of the testimony upon that point would indicate that the bus was going about 40 miles per hour and the other car about 30 miles per hour. Some witnesses testified that the decedent's car left the south curve of the "Y" and proceeded over onto Route 24 by crossing over some sand or gravel which was located in the unpaved portion of the "Y" as it approached Route 24, forming a small triangle, but that too, in our judgment, is unimportant. The engineer of the State Highway Department, who was called as a witness by appellee, testified (Abst. 31), that the south arm of the "Y" of Route 9 up to the point where it comes into Route 24, was built as a part of Route 9.

Appellant takes the position that the south arm of the "Y" of Route 9 is not in fact a part of Route 9 for the reason that if you are traveling on Route 9 up to a point about 200 feet east of Route 24 where Route 9 divides into two branches or a "Y" and you proceed on the right arm of the "Y," then and then only are you on Route 9, because the statute says that Route 9 begins with a public highway at the Indiana State line and runs along in a general westerly direction to Route 24 on the east side of the Illinois river between Pekin and East Peoria, and then goes over Route 24 to Peoria. Appellant further contends that if you proceed on the south arm of the "Y" over Route 9

towards Route 24, that such south arm of the "Y" between the point where Route 9 divides into two arms up to the point where the south arm intersects Route 24, is not in fact a part of Route 9. If this latter contention of appellant be true, then the south arm of this "Y" would neither be a part of Route 9 or of Route 24.

We cannot agree with this contention. This arm of the "Y" was built by the State Highway Department as a part of Route 9 and is just as much a part of it as that portion of the route 200 feet east is a part of Route 9. The hard roads of this State were built for the convenience of travelers who use the same and it is just as important to the traveling public that it may use Route 9 to go to Pekin as it is for the public to use it to go to Peoria. Of course, when the act was passed it provided for the construction of these roads and it was necessary to provide terminals of these respective highways at principal cities through which they should be built, but details of selecting what particular roads should be used or how the respective roads should intersect each with the other were properly left to those intrusted with the duty of constructing them. The matter of joining Route 9 with Route 24 at this point was one of those details and, being left to the discretion and judgment of the Highway Department as to how that joining should be, it, in its wisdom, designed the plan whereby at this point as Route 9 approached Route 24, there should be a "Y" connection made, thus affording travelers an easy and much safer way to use these respective roads in going from points east of Route 24 over Route 9, to points south on Route 24, as well as to points north on Route 24, and likewise for persons using the highway coming from the south on Route 24 and desiring to go east on Route 9 or coming from the north on Route 24 to go east on Route 9. Such a plan is much more con-

venient for the safety of the traveling public than if Route 9 had joined Route 24 at right angles.

We therefore hold that the south arm of the "Y" of Route 9 at this point where it intersects Route 24 is just as much a part of Route 9 as the north arm of the "Y," although it is true that Route 9 proceeds for a distance over Route 24 to the north of Peoria from that point.

It is conceded in this record that Route 9 does not cross and extend beyond Route 24 at this point. The question is then presented, What are intersecting highways? To be an intersecting road, must the road cross the second road and proceed beyond the second road to be an intersecting highway? It therefore becomes material to ascertain what the Legislature meant when the words "intersecting highways" or "roads" were used in the act. In Berry on Automobiles, 4th Edition, page 290, paragraph 299, under the paragraph of intersecting highways, the author uses the following language: "The term 'intersecting highways,' . . . includes all space made by the junction of the streets and space where one street comes into another, although they do not cross."

"We are clearly of the opinion that the Legislature intended to use the word 'intersect' in the sense of joining or touching, or coming in contact with, or entering into, . . . although such public street where another street comes into it does not cross it." At page 291 of said work the following language appears:

"A street which extends to, but not beyond, another street intersects the same, and is an intersecting highway and comes within the meaning of a statute regulating the operation of automobiles when approaching the place where streets cross or intersect."

In *Manly v. Abernethy,* 167 N. C. 220, 83 S. E. 343, at page 344, the court uses the following language: "We are clearly of the opinion that the Legislature

intended to use the word in the sense of joining or touching, or coming in contact with, or entering into, and did not intend that the word 'intersect' should be so restricted in its meaning as not to protect pedestrians and other persons using a public street at a point or space where another street comes into it, although it does not cross it. We should, therefore, give the word its broader meaning, which will include all space made by the junction of streets where accidents are just as likely to occur as where the two streets cross each other. . . . We have seen that the word 'intersect' is defined by Dr. Webster as 'to cut into one another,' and also to 'meet and cross each other.' . . . To cut into does not necessarily mean to divide by crossing between two objects, but may rightly be constructed as entering into, but not passing beyond.''

In the case of *Bettilyon v. C. E. Smith & Son, Inc.,* 96 Conn. 16, 112 Atl. 649, at pp. 650 and 651, the Supreme Court of Errors of Connecticut uses the following language: ''The driver of any vehicle is approaching an intersecting highway when he is coming near to the line where one highway joins another. That is where the intersection begins, and approaching there it had become his duty to grant the right of way at such intersection to any vehicle approaching from his right. The words 'such intersection,' reasonably construed, mean all the space included within the lines of both highways where 'any highway joins another at an angle,' if it crosses the other; or, if one highway joins, but does not cross, the other, all the space that would be included within the lines of both extended to cross each other.''

In the case of *Buckey v. White,* 137 Md. 124, 111 Atl. 777, at page 778, it is said:

''The theory upon which this objection rests is that a lateral road connecting with, but not crossing, another road does not intersect the latter within the

meaning of the statute, and that the driver of an automobile while driving it along a main or trunk road is not required to yield the right of way to a machine approaching from his right along such a lateral road. Such a construction of the statutes is in our opinion too narrow and is opposed to its true meaning and intent. The purpose and design of the statute is to protect the traveling public against collisions at points where roads, running at an angle to each other, join, and to accomplish this end it provides a simple rule of universal application which so clearly defines the respective and relative rights of the drivers of automobiles approaching each other over such connecting roads that it eliminates the confusion and uncertainty which formerly prevailed under such circumstances as to which car was entitled to the right of way. The mischief for which the act was enacted as a remedy was this: That in the case of automobiles approaching each other along connecting roads running at an angle to each other in such a manner that, unless one of them gave way to the other, a collision would result. . . . The danger of such accidents, which the Legislature intended by this statute to remove, was the same at all points where two roads joined, and whether the roads so connecting actually crossed each other, or merely connected, could not possibly lessen or increase that danger.''

In the case of *Hayes v. State,* 11 Ga. App. 371, 75 S. E. 523, at 527, the court uses this language:

''In reference to construction of the word 'intersecting' where one street ended at a point where it touched the other, on the contrary, we think that the two streets did intersect each other. . . . There would be just as much reason for holding that one of the streets ended at the farther margin of the other street as there would be in saying that it ended when it touched the first margin of the street. . . . The

latter highway extended across the margin of the former highway, and the case is plainly within the spirit and reason of the law."

In our own State the question arose in the case of *Geschwinder v. Comer,* 222 Ill. App. 417, and the court said: "Where a street runs into and ends at another street at right angles with it, they intersect within the meaning of statutes or ordinances governing the right of way of vehicles at intersecting streets."

In the light of these authorities we are of the opinion that at the place where this accident happened, Routes 9 and 24 respectively were intersecting highways within the meaning of the statute. As we have already pointed out, the Highway Department not having erected any guides or posted any notices or signs at this point, then the first paragraph of the statute applicable to cases of this character applies.

It was therefore the duty of the bus driver of defendant to stop and yield the right of way to the car of appellee's intestate as the latter car approached and came onto the intersection of Routes 24 and 9.

It is our view that our holding in this regard disposes of appellant's contention that it was error for the court to give to the jury the third plaintiff's given instruction, for it was given in conformity with the theory upon which this case is decided by us and accordingly we hold that it was not error to give that instruction.

The remaining question in the record is as to whether or not the general verdict and the special finding of the jury were manifestly against the weight of the evidence. It is true that defendant below had some 10 or 12 witnesses, most of whom were eyewitnesses to the accident, while the plaintiff below had but two or three witnesses, but there was substantially no contention between the parties as to the material facts in this case. As we have already pointed out, to our

minds it is immaterial whether intestate's car was going 25 or 35 miles per hour or whether defendant's bus was going 30 or 40 miles per hour, or just where in the intersection was the exact spot where the cars came together, so long as it was in the intersection. The main fact was, who had the right of way at this point and was it yielded to him, by the one whose duty it was to yield. Under the facts in this case that was a question of law and we have decided that and approved the instruction the court gave on that point.

The jury, at the request of the defendant, found particularly that the intestate was not guilty of contributory negligence and in so doing it followed the instruction of the court as to the law upon that question. The verdict and special finding were in accordance with the weight of the testimony and should not be disturbed.

For the reasons hereinbefore indicated we are of the opinion that the action of the trial court in this case should be and the same is hereby approved.

*Judgment affirmed.*