E. I. BALLARD, J. J. SHUMAN, J. SAM HINSON, J. L. McCREADY, AND G. W. DOOLEY, TRUSTEES OF CALVARY METHODIST CHURCH OF CHARLOTTE, N. C., AND S. W. SCRUGGS, JR., AND WIFE, KATHLEEN H. SCRUGGS, v. CITY OF CHARLOTTE, A MUNICIPAL CORPORATION.

(Filed 30 April, 1952.)

1. **Administrative Law § 5: Municipal Corporation § 33—**

The failure to follow statutory procedure to contest the levy of assessments for public improvements does not preclude the landowner from maintaining an independent action to vacate the assessments or to enjoin their enforcement if such assessments are void.

2. **Statutes § 5a—**

A statute will be construed to effectuate the intent of the Legislature as therein expressed, and the courts will adopt a construction which will not defeat or impair its objective if possible by any reasonable construction of the language used.

3. **Statutes § 5e: Public Offices § 7a—**

Where a statute confers certain powers on persons as members of a board, the statute grants a joint authority requiring them to act after consultation together in a meeting, but such board may nevertheless act through a majority of its members, G.S. 12-3 (2), and its authority is not terminated by the death of any of its members so long as a majority of them survive and act as a board.

4. **Municipal Corporations § 33—**

Under Chap. 1033, Session Laws of 1947, the death of a member of the Board of Appraisers after a first appraisal has been made does not preclude the survivors, acting as a board, from making the second appraisal required by the statute after the improvements have been completed, since notwithstanding that the statute confers a joint authority, the functions of the board may be exercised by a majority of them.

APPEAL by plaintiffs from *Moore, J.,* at February Term, 1952, of MECKLENBURG.

Civil action to enjoin enforcement of assessments on land abutting on a public improvement.

This cause was heard in the Superior Court on a case agreed, which revealed these facts:

1. The plaintiffs challenge the validity of paving assessments on their lots abutting on the portion of West Boulevard, a public street of the City of Charlotte, between Cliffwood Place and Wilmore Drive. All of the lots formerly belonged to the plaintiffs, S. W. Scruggs, Jr., and his wife, Kathleen H. Scruggs, who conveyed some of them to the Trustees of Calvary Methodist Church during the Spring of 1948.

2. During 1947, a majority of the entire municipal council of the City of Charlotte adopted a resolution at two regular meetings of the council, finding as a fact that it was necessary and in the public interest to pave West Boulevard from Cliffwood Place to Wilmore Drive without a petition by the abutting property owners, and ordering the city to make such improvement and to pay all the cost incident to it except the part legally assessable against abutting property under Section 52 of the Charter of the City of Charlotte, i.e., Chapter 366 of the Public-Local Laws of North Carolina for 1939, as amended by Chapter 1033 of the 1947 Session Laws of North Carolina.

3. The second of these meetings was held 1 October, 1947. Within not less than five days before that time, the Charlotte City Council published a notice in a newspaper of general circulation in the City of Charlotte, notifying abutting property owners of the time and place of the second meeting and of its intention to take this action at the same: (1) To order the paving of West Boulevard between Cliffwood Place and Wilmore Drive without a petition by the abutting property owners as authorized by the statute cited above; and (2) to name appraisers for the area to be improved in obedience to the provisions of such statute requiring the mayor to nominate and city council to appoint "a board of appraisers, consisting of five competent persons, . . . whose duty it shall be to appraise the property bordering upon . . . (the) . . . area (a) before the same is . . . improved, and (b) after the improvements are completed, and to make written report of such appraisals to the city clerk." Although the plaintiffs, S. W. Scruggs, Jr., and his wife, Kathleen H. Scruggs, the then owners of all the lots, had actual notice of the second meeting, they did not attend it or protest the making of the proposed improvement.

4. At the meeting on 1 October, 1947, five competent persons, namely, J. E. Barrentine, J. H. Carson, E. B. Dudley, John F. Durham, and Frank E. Harlan, were nominated by the mayor and appointed by the city council to serve as a board of appraisers for the area to be improved. They qualified as appraisers, met on the premises before the paving was begun, and made a contemporary appraisal of the property bordering on the area to be paved. One of them, to wit, E. B. Dudley, died while

the work was in progress. After it was finished, the four surviving appraisers, namely, J. E. Barrentine, J. H. Carson, John F. Durham, and Frank E. Harlan jointly appraised the property bordering upon the area, and filed with the city clerk a written report, showing the appraisals of each lot bordering upon the area both before the improvement was begun and after it was completed. The report showed that the appraised benefits conferred by the improvement upon all the lots owned by the Trustees of Calvary Methodist Church totaled $2,033.50, and that the appraised benefits conferred by the improvement upon all the lots retained by the plaintiffs, S. W. Scruggs, Jr., and wife, Kathleen H. Scruggs, totaled $4,708.27.

5. Within fifteen days after the report of the four surviving appraisers was filed with the city clerk, to wit, on 27 October, 1948, the Charlotte City Council held a hearing with respect to the benefits conferred upon the property within the improvement area, determined that the appraised benefit to each lot of the plaintiffs was less than one-half the cost of the improvement of such lot as measured by the statutory rule for calculating such cost, and made special assessments against the various lots of the plaintiffs for the appraised benefits set forth in the written report.

6. Within ten days thereafter, the Charlotte City Council published a notice in a newspaper of general circulation in the City of Charlotte, stating in detail the specific assessments for appraised benefits made by it against the various lots of the respective plaintiffs, and notifying the plaintiffs that the assessment against each particular lot would be final and binding unless the owner or owners of such lot gave written notice to the city council within fifteen days after the publication that such owner or owners took an appeal to the next term of the Superior Court of Mecklenburg County and within five days thereafter served upon the city manager a written statement of the facts upon which such owner or owners based the appeal.

7. The Trustees of Calvary Methodist Church had actual knowledge that the portion of West Boulevard between Cliffwood Place and Wilmore Drive was being paved by the City of Charlotte when they acquired their lots abutting thereon. None of the plaintiffs ever appeared before the Charlotte City Council to object to the making of any of the assessments, or ever appealed to the Superior Court of Mecklenburg County from any of the assessments.

8. On 2 August, 1951, the plaintiffs brought this direct action against the defendant, the City of Charlotte, in the Superior Court of Mecklenburg County, praying a decree declaring the special assessments on their lots to be absolutely void and enjoining their enforcement. When the cause was heard upon the case agreed, the presiding judge concluded as a matter of law that the plaintiffs are not entitled to the relief sought by

them and entered judgment accordingly. The plaintiff excepted and appealed, assigning the conclusion and judgment as error.

*W. C. Davis for plaintiffs, appellants.*
*John D. Shaw for defendant, appellee.*

ERVIN, J.    The Charlotte City Council undertook to make the assessments in controversy under the statute resulting from the amendment of Section 52 of the Charter of the City of Charlotte, *i.e.,* Chapter 366 of the Public-Local Laws of North Carolina for 1939, by Chapter 1033 of the 1947 Session Laws of North Carolina. Instead of setting forth this lengthy statute verbatim, we shall refer to such of its provisions as are relevant to the instant case. The plaintiffs failed to appeal to the Superior Court from the assessments as authorized by this statute. Despite their neglect in this respect, the plaintiffs are entitled to vacate the assessments or to enjoin their enforcement if they are void. *Winston-Salem v. Smith,* 216 N.C. 1, 3 S.E. 2d 328; *Charlotte v. Brown,* 165 N.C. 435, 81 S.E. 611.

The plaintiffs insist that the assessments are void for this solitary reason: That the statutory authority of the board of appraisers came to an end with the death of E. B. Dudley, one of its members.

It thus appears that the question arising on the appeal hinges on the meaning of the statute under consideration. As a consequence, we must ascertain the intention of the Legislature and carry such intention into effect to the fullest degree. *Norman v. Ausbon,* 193 N.C. 791, 138 S.E. 162; *Hunt v. Eure,* 188 N.C. 716, 125 S.E. 484. In performing this judicial task, we must avoid a construction which will operate to defeat or impair the object of the statute, if we can reasonably do so without violence to the legislative language. *Manly v. Abernathy,* 167 N.C. 220, 83 S.E. 343.

When it is read and interpreted as a whole, the statute evinces a paramount purpose on the part of the Legislature to empower the Charlotte City Council to improve the public streets of the municipality without petitions by abutting property owners, and to assess against each abutting property the benefits conferred upon it by the improvement, or one-half the cost of its improvement, whichever is the lesser. The provisions of the statute imposing upon boards of appraisers the duty to make appraisals of benefits are subsidiary in character. They are merely designed to aid in the consummation of the paramount legislative purpose.

These statutory provisions specify, in substance, that before work is begun the mayor is to nominate and the city council is to appoint "a board of appraisers, consisting of five competent persons," for each area to be improved under the provisions of the statute, and that the board so

nominated and appointed is to do these several public acts in respect to its area: (1) To appraise the property bordering upon the area before it is improved; (2) to appraise the property bordering upon the area after the improvement is completed; and (3) to make written report of such appraisals to the city clerk.

Manifestly the first and second appraisals must be made by the board of appraisers at different times. When it enacted the statute, the Legislature knew that "death tracketh everything living and catcheth it in the end" and that in consequence death might well overtake a member of the board of appraisers between the two appraisals. Notwithstanding its knowledge of this tragic truth, the Legislature made no provision whatever to fill a vacancy occasioned by death in the membership of the board.

The plaintiffs argue that these statutory provisions confer a joint authority upon "a board of appraisers consisting of five . . . persons," to appraise the abutting property on both occasions, and make the exercise of such joint authority by all five appraisers a jurisdictional prerequisite to any valid assessment; that the joint authority necessarily terminates with the death of any one of the appraisers prior to the second appraisal; and that consequently any assessment based in whole or in part upon the subsequent action of the surviving appraisers is void.

This construction of these statutory provisions nullifies or thwarts in a large measure the paramount purpose of the statute, and cannot be accepted if the legislative language reasonably admits of a different interpretation.

The statutory provisions under scrutiny undoubtedly grant to the members of the board of appraisers a joint authority, and require them to exercise it as a board, i.e., by meeting and consulting together. But they do not compel the conclusion that the Legislature intended the authority of the board to perish with the death of one of its members. Indeed, they justify the contrary view.

Where a statute confers a joint authority on several persons to do a public act and makes no provision for filling a vacancy occurring among them, the authority is not terminated by the death of one or more of them, if there are enough of them left legally to perform such act. *Quayle v. Missouri, K. & T. Ry. Co.,* 63 Mo. 465; *Bublitz v. Borough of Hillsdale,* 8 N. J. Misc. 334, 150 A. 229; *People v. Syracuse,* 63 N.Y. 291; *Welch v. Getzen,* 85 S.C. 156, 67 S.E. 294; 29 C.J.S., Eminent Domain, section 297; 67 C.J.S., Officers, section 109 (b). The rule of statutory construction embodied in G.S. 12-3 (2) provides that "all words purporting to give a joint authority to three or more public officers or other persons shall be construed as giving such authority to a majority of such officers or other persons, unless it shall be otherwise expressly declared in the law giving the authority." *Austin v. Helms,* 65 N.C. 560.

For these reasons, we conclude that the authority granted by the statute to the board of five appraisers is not terminated by the death of any of its members as long as three of them remain, and that in such case the surviving appraisers can make a valid appraisal if all of them attend and take part in the transaction. This conclusion necessitates an affirmance of the judgment.

Affirmed.