IN RE INQUIRY CONCERNING JUDGE HERBERT W. HARDY

No. 62

(Filed 24 January 1978)

1. Statutes § 5— construction—purpose

If a strict literal interpretation of the language of a statute contravenes the manifest purpose of the Legislature, the reason and purpose of the law should control and the strict letter thereof should be disregarded.

2. Statutes § 5— construction—context of words and phrases

Words and phrases of a statute may not be interpreted out of context, but individual expressions must be construed as a part of the composite whole and must be accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit.

3. Statutes § 5— construction—object of the statute

A construction which will defeat or impair the object of a statute must be avoided if that can reasonably be done without violence to the legislative language; and, where possible, the statute should be given a construction which, when practically applied, will tend to suppress the evil which the Legislature intended to prevent.

4. Statutes § 5— construction of "may"

Ordinarily when the word "may" is used in a statute, it will be construed as permissive and not mandatory.

5. Statute § 5— construction—mandatory or directory word

Whether a particular word in a statute is mandatory or merely directory must be determined in accordance with the legislative intent; and legislative intent is usually ascertained not only from the phraseology of the statute but also from the nature and purpose of the act and the consequences which would follow its construction one way or the other.

6. Judges § 7— recommendation of censure by Judicial Standards Commission—power of Supreme Court to remove judge

G.S. 7A-376 and 7A-377 authorize and empower the Supreme Court, unfettered in its adjudication by the recommendation of the Judicial Standards Commission, to make the final judgment whether to censure or remove a judge or justice or whether to remand or dismiss the proceeding. Therefore, the Supreme Court may order the removal of a judge when the Judicial Standards Commission has only recommended that the judge be censured.

7. Judges § 7— censure of district court judge

A district court judge is censured by the Supreme Court for wilful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute because of his actions in (1) disposing of traffic cases when the court was not in session and without notice to the prosecuting attorney, (2) changing a verdict of guilty in a traffic case to not

guilty while the court was not in session and without the knowledge of the prosecuting attorney, and (3) writing a letter to another district court judge requesting that such judge enter a prayer for judgment continued upon payment of costs in a pending traffic case and forwarding a check from the defendant for the payment of the costs in that case.

Justice LAKE concurring in part and dissenting in part.

Justices BRANCH and MOORE join in the concurring and dissenting opinion.

THIS proceeding is before the Supreme Court upon the recommendation of the Judicial Standards Commission (Commission), filed with this Court on 30 December 1976, that Herbert W. Hardy, a judge of the General Court of Justice, District Court Division, Eighth Judicial District (Respondent), be censured for wilful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute. See Article IV, section 17(2) of the North Carolina Constitution and G.S. 7A-376 (1975 Cum. Supp.).

This proceeding was instituted before the Commission by the filing of a verified complaint on 3 November 1976 which alleged that Respondent had engaged in wilful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute. The various acts of misconduct alleged in the complaint are hereinafter set out in the Commission's Findings of Fact.

Respondent filed a verified answer averring: (1) that the statute under which the Commission attempts to proceed is unconstitutional; (2) that Respondent was not properly notified of the investigation of him, the nature of the charge and whether the investigation was on the Commission's own motion or upon written complaint, and that Respondent was not afforded a reasonable opportunity to present relevant matters, in violation of Rule 7(b) of the Rules of the Judicial Standards Commission; (3) that the complaint itself is not properly verified; (4) that Respondent did release Roland Coley from jail for time served due to the sheriff's complaint of over-crowded jail conditions but such conduct was not prejudicial to the administration of justice; (5) that Respondent did write a letter to Judge F. Fetzer Mills on behalf of C. B. Henson but such act was not wilful misconduct and was not prejudicial to the administration of justice; and (6) that Respondent has no independent recollection of all other events

In re Hardy

alleged in the complaint to constitute wilful misconduct and such allegations are denied.

Upon due notice Respondent was accorded a full adversary hearing before the Commission on 18 February 1977 at which time he was present and represented by counsel. Millard R. Rich, Jr., Deputy Attorney General and special counsel, presented the evidence in support of the charges. Respondent, represented by his attorneys of record, did not testify in his own behalf but offered many witnesses who testified to his good character. After hearing all evidence the Commission made written findings of fact from which it concluded as a matter of law that the conduct of Respondent, detailed in the findings, constituted wilful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute. The specific findings upon which the Commission based these conclusions are as follows:

"7. That on November 15, 1974, Jim Rastus Grimsley, Route 1, Box 395, Ayden, N. C., in case no. 74CR14498, Wayne County, was charged in a warrant issued on said date by Magistrate W. H. Greenfield with unlawfully and wilfully operating a motor vehicle on a public street or highway at a speed of 75 miles per hour in a 55 mile per hour zone. On January 7, 1975, defendant Grimsley pled guilty to speeding 70 miles per hour in a 55 mile per hour zone in District Court of Wayne County, presided over by the Respondent. That on April 16, 1975, the Respondent, while presiding over the Wayne County District Criminal Court, caused to be stricken by an official of the Court the guilty verdict previously entered in said case and caused to be entered a judgment of not guilty in said case. That the striking of the judgment entered on January 7, 1975, and the entry of the not guilty verdict on April 16, 1975, was done by Respondent while court was not in session, while the defendant Grimsley was not present, while the Assistant District Attorney Paul Wright, who was prosecuting the docket, was not present and without the knowledge or consent of Assistant District Attorney Paul Wright.

8. That on December 15, 1975, James Edward Gurganus was charged in criminal action no. 75CR14649, Wayne County, with wilfully and unlawfully operating a motor vehicle on

a public street or highway at a speed of 55 miles per hour in a 45 mile per hour zone. On April 1, 1976, the Respondent dismissed said case not in open court and without the knowledge or consent of the District Attorney or his Assistant Paul Wright, who was scheduled to prosecute the docket on April 5, 1976, when said case was scheduled for trial.

9. That on or about September 7, 1973, Respondent wrote a letter to F. Fetzer Mills, a District Court Judge of the Twentieth Judicial District, requesting that Judge Mills enter a judgment of Prayer for judgment continued with the payment of cost in a criminal action pending in the District Court of Stanly County wherein C. B. Henson was charged with wilfully and unlawfully operating a motor vehicle on a public street or highway at a speed of 70 miles per hour in a 55 mile per hour zone. Respondent also forwarded to Judge Mills at said time a check dated September 7, 1973, No. 49, drawn on the Southern Bank and Trust Company, payable to the Clerk of Superior Court of Stanly County in the amount of $16.00 signed by C. B. Henson, the defendant in said action.

10. That Respondent, while presiding over the District Court of Greene County on or about June 25, 1976, entered or caused to be entered a judgment of 'exceeding a safe speed' in File No. 76CR1279 (wherein Evelyn A. Stancill was charged with operating a motor vehicle on a street or highway at a speed of 68 miles per hour in a 55 mile per hour zone). That said judgment was entered while court was not in session and without the knowledge or consent of the Assistant District Attorney, Ms. Libby Jones, prosecuting the docket on said date.

11. That Respondent, while presiding over the District Court of Greene County on or about June 25, 1976, entered or caused to be entered a judgment of 'exceeding a safe speed' in File No. 76CR1369 (wherein Brantley Hinson was charged with operating a motor vehicle on a street or highway at a speed of 68 miles per hour in a 55 mile per hour zone). That said judgment was entered while court was not in session and without the knowledge or consent of the Assistant District Attorney, Ms. Libby Jones, prosecuting the docket on said date.

12. That the aforesaid FINDINGS and this RECOMMENDA-TION were concurred in by five or more members of the Judicial Standards Commission."

Upon the foregoing findings and conclusions the Commission recommended "that respondent be censured by the Supreme Court for said conduct."

Respondent petitioned this Court for a hearing upon the censure recommendation, which was granted, and the proceeding was calendared as Case No. 120 at the Spring Term 1977. Respondent thereupon filed a brief and was heard through counsel on oral argument before this Court on 14 July 1977.

On 18 July 1977, before passing upon the censure recommendation, the Court *ex mero motu* set the matter for reargument at the Fall Term on the following questions:

1. Whether this Court may order *the removal* of a judge upon a recommendation to the Court by the Judicial Standards Commission that the judge be censured.

2. If so, whether the respondent judge in this case should be removed.

The arguments of Respondent and the Commission on these points were heard by this Court on 14 October 1977.

*Rufus L. Edmisten, Attorney General; Millard R. Rich, Jr., Deputy Attorney General; James E. Scarbrough, Associate Attorney for the Judicial Standards Commission.*

*Duke and Brown by John E. Duke; Herbert B. Hulse; Thomas J. White, Jr., attorneys for respondent.*

HUSKINS, Justice.

We overrule without discussion Respondent's contentions (1) that Article 30 of Chapter 7A of the General Statutes is unconstitutional because it was enacted prior to the time the Constitution was amended authorizing its enactment, (2) that the General Assembly unconstitutionally delegated its legislative powers to the Judicial Standards Commission, and (3) that the procedures followed by the Commission violate Respondent's due process rights under both federal and state constitutions. All these arguments have been answered adversely to Respondent in

*In re Nowell*, 293 N.C. 235, 237 S.E. 2d 246 (1977). We therefore put these matters aside and go directly to the questions remaining: Is the Supreme Court authorized and empowered to order the removal of a judge when the Judicial Standards Commission has only recommended that the judge be censured? If so, should the Respondent Judge in this case be censured as recommended by the Commission or should he be removed from office?

G.S. 7A-376 provides in pertinent part: "Upon recommendation of the Commission, the Supreme Court may censure or remove any justice or judge for wilful misconduct in office, . . . or conduct prejudicial to the administration of justice that brings the judicial office into disrepute."

G.S. 7A-377 provides in pertinent part: "A majority of the members of the Supreme Court voting must concur in any order of censure or removal. The Supreme Court may approve the recommendation, remand for further proceedings, or reject the recommendation."

The provisions of these statutes are parts of the same enactment, relate to the same class of persons and are aimed at suppression of the same evil. The statutes are therefore *in pari materia* and must be construed accordingly. 73 Am. Jur. 2d, Statutes, § 189; *Redevelopment Comm. v. Bank*, 252 N.C. 595, 114 S.E. 2d 688 (1960); *Blowing Rock v. Gregorie*, 243 N.C. 364, 90 S.E. 2d 898 (1956); *Keith v. Lockhart*, 171 N.C. 451, 88 S.E. 640 (1916).

In construing the language of statutes we are guided by the primary rule of construction that the intent of the Legislature controls. "In the interpretation of statutes, the legislative will is the all-important or controlling factor. Indeed, it is frequently stated in effect that the intention of the legislature constitutes the law." 73 Am. Jur. 2d, Statutes, § 145; *State v. Spencer*, 276 N.C. 535, 546, 173 S.E. 2d 765, 773 (1970).

[1] If a strict literal interpretation of the language of a statute contravenes the manifest purpose of the Legislature, the reason and purpose of the law should control and the strict letter thereof should be disregarded. *State v. Barksdale*, 181 N.C. 621, 107 S.E. 505 (1921).

[2] Words and phrases of a statute may not be interpreted out of context, but individual expressions "must be construed as a

part of the composite whole and must be accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit." *Watson Industries v. Shaw, Comr. of Revenue*, 235 N.C. 203, 210, 69 S.E. 2d 505, 511 (1952).

[3]   A construction which will defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language. *Ballard v. Charlotte*, 235 N.C. 484, 70 S.E. 2d 575 (1952). Where possible, statutes should be given a construction which, when practically applied, will tend to suppress the evil which the Legislature intended to prevent. 73 Am. Jur. 2d, Statutes, § 157. *See State v. Spencer*, supra. "It would violate the elementary rule of construction not to construe it in that way, for we are told that the words in a statute are to be construed with reference to its subject-matter and the objects sought to be attained . . . as well as the legislative purpose in enacting it; and its language should receive that construction which will render it harmonious with that purpose, rather than that which will defeat it. . . ." *Manly v. Abernathy*, 167 N.C. 220, 221-22, 83 S.E. 343, 344 (1914).

It now becomes our duty to construe and interpret G.S. 7A-376 and -377 in light of these rules.

We first look at Article IV, section 17(2) of the Constitution of North Carolina which reads in pertinent part as follows: "The General Assembly shall prescribe a procedure, in addition to impeachment and address set forth in this section, . . . for the censure and removal of a justice or judge of the General Court of Justice for wilful misconduct in office, . . . or conduct prejudicial to the administration of justice that brings the judicial office into disrepute." In obedience to this mandatory provision of the Constitution, the General Assembly enacted Article 30 of Chapter 7A of the General Statutes creating the Judicial Standards Commission, prescribing the grounds for censure or removal and fixing the procedures to be followed. See G.S. 7A-375, -376, and -377. By such enactment it was the intent of the General Assembly to provide the machinery and prescribe the procedure for the censure and removal of justices and judges for wilful misconduct in office, or conduct prejudicial to the administration of justice that brings the judicial office into disrepute. When G.S. 7A-376 and -377 are read aright they provide that upon recommendation of the Judicial Standards Commission the Supreme Court *may* censure

or remove any justice or judge, *may* approve or reject the recommendation of the Commission, or *may* remand the matter for further proceedings.

[4, 5] Ordinarily when the word "may" is used in a statute, it will be construed as permissive and not mandatory. *Felton v. Felton*, 213 N.C. 194, 195 S.E. 533 (1938); *Rector v. Rector*, 186 N.C. 618, 120 S.E. 195 (1923). Whether a particular word in a statute is mandatory or merely directory must be determined in accordance with the legislative intent; and legislative intent is usually ascertained not only from the phraseology of the statute but also from *the nature and purpose of the act* and the consequences which would follow its construction one way or the other. *Art Society v. Bridges, State Auditor*, 235 N.C. 125, 69 S.E. 2d 1 (1952); *State v. Earnhardt*, 170 N.C. 725, 86 S.E. 960 (1915).

A recommendation of the Commission that a justice or judge be disciplined in some fashion brings the controversy before the Supreme Court for such action as the Court deems proper. The Commission can neither censure nor remove. It functions as an arm of the Court to conduct hearings for the purpose of aiding the Supreme Court in determining whether a judge is unfit or unsuitable. "Its recommendations are not binding upon the Supreme Court, which will consider the evidence on both sides and exercise its independent judgment as to whether it should censure, remove, or decline to do either." *In re Nowell*, 293 N.C. 235, 244, 237 S.E. 2d 246, 252 (1977). The General Assembly designated the Supreme Court as the adjudicatory body to provide the final scrutiny and make the final judgment whether to censure, remove, remand or dismiss the proceeding. Our conclusion in this regard is supported by courts in other jurisdictions which have considered the question. *See Geiler v. Commission on Judicial Qualifications*, 10 Cal. 3d 270, 515 P. 2d 1, 110 Cal. Rptr. 201 (1973); *In re Robson*, 500 P. 2d 657 (Alaska 1972); *Spruance v. Commission on Judicial Qualifications*, 13 Cal. 3d 778, 532 P. 2d 1209, 119 Cal. Rptr. 841 (1975); *In re Kelly*, 238 So. 2d 565 (Fla. 1970); *In re Diener*, 268 Md. 659, 304 A. 2d 587 (1973).

[6] We therefore hold that all options listed in G.S. 7A-376 and -377 are permissive options available to the Supreme Court in disposing of any disciplinary proceeding. G.S. 7A-376 and -377 authorize and empower the Court, unfettered in its adjudication by the recommendation of the Commission, to make the final

judgment whether to censure, remove, remand for further pro-
ceedings or dismiss the proceeding. This interpretation is in har-
mony with the rules of statutory construction and promotes the
legislative purpose to suppress wilful misconduct by judicial of-
ficers and conduct prejudicial to the administration of justice that
brings the judicial office into disrepute.

[7]   We now turn to the question whether Judge Hardy should be
removed from office, censured, or whether the proceedings
against him should be dismissed.

First we conclude that the Commission's findings of fact are
supported by clear and convincing evidence. We therefore accept
the facts as established by the findings and adopt them as our
own. The conduct of Respondent established by Findings 7, 8, 9,
10 and 11 heretofore quoted verbatim, constitutes wilful miscon-
duct in office and conduct prejudicial to the administration of
justice that brings the judicial office into disrepute. *In re Crutch-
field*, 289 N.C. 597, 223 S.E. 2d 822 (1975); *In re Edens*, 290 N.C.
299, 226 S.E. 2d 5 (1976); *In re Stuhl*, 292 N.C. 379, 233 S.E. 2d 562
(1977); *In re Nowell*, 293 N.C. 235, 237 S.E. 2d 246 (1977).

A comparison of Judge Hardy's indiscretions with the judicial
misconduct in *Crutchfield*, *Edens* and *Stuhl* reveals striking
similarity. Since we followed the Commission's recommendation in
prior cases and only censured the offender, fairness requires a
similar result here. In view of the Court's power to remove from
office a justice or judge for misconduct prejudicial to the ad-
ministration of justice that brings the judicial office into
disrepute, it is appropriate to emphasize that in the future the
result in each case will be decided upon its own facts.

For the reasons stated we conclude that Respondent should
be censured in accordance with the recommendation of the
Judicial Standards Commission.

Now, therefore, it is ordered by the Supreme Court in con-
ference that Judge Herbert W. Hardy be and he is hereby cen-
sured by this Court for the conduct specified in the Findings of
Fact.

Justice LAKE concurring in part and dissenting in part.

Being bound by the decision of this Court in *In re Nowell*,
293 N.C. 235, 237 S.E. 2d 246 (1977), from which I dissented (see

also my dissent in *In re Crutchfield*, 289 N.C. 597, 223 S.E. 2d 822 (1975), I accept as presently authoritative the majority's position that Article 30 of Chapter 7A of the General Statutes is constitutional and binding upon this Court. I also concur in the majority's conclusion that the findings of fact made by the Judicial Standards Commission concerning the actions of Judge Hardy are supported by clear and convincing evidence, that these actions constitute wilful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute. Consequently, I concur in the conclusion of the majority that he should be censured in accordance with the recommendation of the Judicial Standards Commission.

I respectfully dissent from the conclusion and holding of the majority opinion that this Court has authority to order the removal from office of a judge when the Judicial Standards Commission has not so recommended but, on the contrary, has recommended that the judge be censured only.

The following statements in the majority opinion, as here interpreted and applied by the majority, are, in my view, incorrect and are not supported by authority:

> "A recommendation of the Commission that a justice or judge be disciplined *in some fashion* brings the controversy before the Supreme Court *for such action as the Court deems proper*. The Commission *** functions as an arm of the Court to conduct hearings for the purpose of aiding the Supreme Court in determining whether a judge is unfit or unsuitable. *** We, therefore, hold that all options listed in G.S. 7A-376 and -377 are permissive options available to the Supreme Court in disposing of any disciplinary proceeding. G.S. 7A-376 and -377 authorize and empower the Court, *unfettered in its adjudication by the recommendation of the Commission*, to make the final judgment whether to censure, remove, remand for further proceedings or dismiss the proceeding." (Emphasis added.)

Upon these statements the majority rests its holding that this Court has authority to remove a judge from office although the Judicial Standards Commission has made no such recommendation. This decision of the majority is, in my opinion, a usurpation of power in which I am unable to concur.

Never before in the history of this State has this Court asserted that any such power resides in it. So strange is this assertion of power to our law that the majority, in the present instance, feels "fairness requires" that the power not be exercised in this case. In the future, however, the majority says that if the Judicial Standards Commission, acting pursuant to its statutory authority, makes a finding of fact, supported by evidence, that a justice or judge at any level in the General Court of Justice has engaged in any "conduct prejudicial to the administration of justice that brings the judicial office into disrepute," four members of this Court can decree his removal from office even though the Judicial Standards Commission thought the conduct merited no more than a censure and the other three members of this Court agree with the Commission.

The majority opinion states that its conclusion is supported by decisions of courts in California, Alaska, Florida and Maryland. In interpreting statutes, decisions of courts of other jurisdictions are not as helpful as are decisions of those courts upon questions of the common law. As the majority opinion states, the determinative question in construing a statute is, What did the Legislature intend? In making this determination, the history, constitutional, legislative and political, of the state in question is significant and this varies widely from state to state. This is particularly important where, as here, we are called upon to determine whether the Legislature of North Carolina, by the enactment of Article 30 of Chapter 7A of the General Statutes, intended to give to the majority of this Court the power to remove from office a judge elected to that office by the people.

With the exception of the special judges of the Superior Court, who are appointed, and may be reappointed, by the Governor, all District Court judges, judges of the Superior Court, judges of the Court of Appeals, and justices of this Court are elected to office by the people of the State (or, in the case of the district judges, by the people of the district) for a limited term, at the conclusion of which they must be reelected or cease to serve. The removal of a judge from office on the ground of misconduct in office or "conduct prejudicial to the administration of justice that brings the judicial office into disrepute" is a matter of the most serious consequences to him. He is, thereby, not only deprived of the honor, power and emoluments of the office for the remainder

of his term, but is also permanently disqualified from holding further judicial office in this State and G.S. 7A-376 expressly provides that he "receives no retirement compensation," regardless of how many years he has served with fidelity and distinction or how much he had paid into the State Retirement Fund pursuant to the provisions of the Retirement Act. But these are not the only consequences of his removal from office. The more serious consequence is that the people, who elected him to be their judge, are deprived of his services for the remainder of his term. It is not a light thing for this Court to assume the power to say to the people of North Carolina, "You have lawfully elected this judge, but we have determined that he cannot serve you."

Types of conduct which any right-minded person would deem to disqualify a man or woman to hold judicial office readily come to mind, but, fortunately, the history of the North Carolina judiciary, at all levels in the judicial hierarchy, shows that these have been and are exceedingly rare in the actual life of this State. Should they occur, this Court is not the only hope of the people for the removal of such a judge from office. Unlike judges of the Federal courts, a judge of any court in North Carolina (except the special judges of the Superior Court mentioned above) can be removed from office by the people themselves at the next election. But this is not all. Such a judge may be removed during his term of office by either of two methods. (1) He may be removed by impeachment. (2) He may be removed by action of this Court *when the Judicial Standards Commission has properly so recommended.* Thus, it is perfectly clear that the present holding of the majority opinion cannot be justified on the ground that it is necessary in order to protect the people of North Carolina from gross misconduct, in or out of office, by judges.

It is my opinion that it is equally clear that G.S. 7A-376 and 7A-377, relied upon by the majority opinion, do not support its conclusion.

Prior to 7 November 1972, Article IV, § 17, of the Constitution of North Carolina, provided that any justice of the Supreme Court, judge of the Court of Appeals or judge of the Superior Court could be removed from office for mental or physical incapacity by joint resolution of two-thirds of all the members of each House of the General Assembly, and expressly provided, "Removal from office for any other cause shall be by im-

peachment." Then, as now, Article IV, § 4, of the Constitution of North Carolina, provided, "The Court for the Trial of Impeachments shall be the Senate." Article IV, § 17(2), provided, "The General Assembly shall provide by general law for the removal of District Judges and Magistrates for misconduct or mental or physical incapacity." Obviously, prior to the 1972 Amendment to this provision of our Constitution, this Court did not have the authority which it now asserts.

In the general election of 7 November 1972, the voters of this State approved and placed into our Constitution an amendment of Article IV, § 17. Paragraph (1) of that section, as so amended, provides for removal of a justice or judge of the General Court of Justice by the General Assembly. Paragraph (2) now reads as follows:

"(2) *Additional method of removal of Judges.* — The General Assembly shall prescribe a procedure, in addition to impeachment and address set forth in this section, for the removal of a Justice or Judge of the General Court of Justice for mental or physical incapacity interfering with the performance of his duties which is, or is likely to become permanent, and for the censure and removal of a Justice or Judge of the General Court of Justice for wilful misconduct in office, wilful and persistent failure to perform his duties, habitual intemperance, conviction of a crime involving moral turpitude, or conduct prejudicial to the administration of justice that brings the judicial office into disrepute."

Obviously, the 1972 Amendment to Article IV, § 17, conferred upon this Court no power to remove a judge from office. Such power, if it exists, must be derived from G.S. Chapter 7A, Article 30, enacted by the General Assembly, contingent upon the approval by the people at the general election of 1972 of the above mentioned amendment to Article IV, § 17, of the Constitution of North Caorlina. The pertinent provisions of that article are G.S. 7A-376 and G.S. 7A-377. The pertinent provisions of those portions read as follows:

"G.S. 7A-376. *Grounds for censure or removal.* — Upon recommendation of the Commission the Supreme Court may censure or remove any justice or judge for wilful misconduct in office, wilful and persistent failure to perform his duties,

habitual intemperance, conviction of a crime involving moral turpitude, or conduct prejudicial to the administration of justice that brings the judicial office into disrepute ***"

"G.S. 7A-377. *Procedures; ***.* — (a) Any citizen of the State may file a written complaint with the Commission concerning the qualifications or conduct of any justice or judge of the General Court of Justice, and thereupon the Commission shall make such investigation as it deems necessary. The Commission may also make an investigation on its own motion. *** At least five members of the Commission must concur in any recommendation to censure or remove any justice or judge. *** *The Supreme Court may approve the recommendation, remand for further proceedings, or reject the recommendation. ***"* (Emphasis added.)

By the express language of this statute this Court has no authority to take any action whatsoever except "upon recommendation of the Commission." It is a distortion of the plain language of this statute to say that once the Commission makes a recommendation for censure the Supreme Court can take whatever action it thinks proper. The clear import of the statutory language, "Upon recommendation of the Commission," is that the Supreme Court may censure the respondent judge if the Commission so recommends or it may remove him from office if the Commission so recommends.

However, we are not left to the construction of this phrase in G.S. 7A-376. The Legislature has expressly stated what this Court may do in response to a recommendation by the Judicial Standards Commission. It has said, "The Supreme Court may approve the recommendation, remand for further proceedings, or reject the recommendation." This Court has no other authority.

To remove from office a judge, as to whom the Commission has recommended censure, is certainly not an approval of that recommendation. It is not a remand for further proceedings. It is a rejection of the Commission's recommendation, but it is more than that. It is a rejection of the Commission's recommendation and the substitution for that recommendation of this Court's conclusion as to what the recommendation should have been. This, the statute simply does not permit this Court to do.

The Judicial Standards Commission is not, as the majority opinion says it is, "An arm of this Court." It is not like a special master or referee, appointed by this Court to conduct an inquiry, which this Court, itself, could conduct, and make a report to this Court. The Commission is an independent body created by the Legislature. It is the heart of the machinery created by the Legislature as an alternative to impeachment. Impeachment is, throughout, a legislative procedure, with which this Court has no concern whatever. Constitution of North Carolina, Article IV, §§ 1 and 4. The only function of this Court in the new alternative procedure is to act as a check and restraint upon the Judicial Standards Commission. As the majority opinion states, the Judicial Standards Commission has not been given by the Legislature the final authority either to censure or to remove a judge. Clearly, the Legislature did not intend for the Commission to have the Legislature's unbridled authority of impeachment, but it is just as clear that the Legislature did not intend to give this Court the unbridled authority. The Legislature, itself, retains that power, the House of Representatives having the power to impeach and the Senate being the Court for the Trial of Impeachments. North Carolina Constitution, Article IV, § 4.

This Court's only function in the new alternative to impeachment is to act "upon the recommendation of the Commission," i.e., to "approve the recommendation, remand for further proceedings, or reject the recommendation." The decision of the majority in the present case lays claim to a fourth power—the power to impose upon the offending judge a sanction not recommended by the Commission.

This Court has no authority to remove Judge Hardy from office in this proceeding. Therefore, its decision not to remove him is not a matter of judicial grace. The Court is simply without that power.

Justices BRANCH and MOORE join in this opinion.