MILLER BREWING COMPANY v. MORGAN MECHANICAL CONTRACTORS, INC.

No. 8717SC989

(Filed 31 May 1988)

Contracts § 10— defendant's agreement to construct and alter conveyor systems—
    defendant's agreement to hold plaintiff harmless—agreement against public
    policy

      Where an employee of defendant suffered an accident at a time when defendant was performing work for plaintiff pursuant to an agreement to construct and/or alter an appliance, any promise by defendant in connection with that agreement to indemnify or hold plaintiff harmless was against public policy, void, and unenforceable under N.C.G.S. § 22B-1; furthermore, there was no merit to plaintiff's contention that a clause requiring a contractor to obtain insurance covering the owner's indemnification rendered valid an indemnity provision which was otherwise void under N.C.G.S. § 22B-1 because it was an "insurance contract" or an "agreement issued by an insurer," since such an interpretation would render the statute meaningless, and the terms "insurance

contract" and "any other agreement issued by an insurer" refer to contracts of insurance and insurers defined, authorized, and regulated by Chapter 58 of the General Statutes.

APPEAL by plaintiff from *Morgan (Melzer A., Jr.), Judge.* Judgment entered 14 July 1987 in Superior Court, ROCKINGHAM County. Heard in the Court of Appeals 8 March 1988.

*Smith, Helms, Mulliss and Moore, by J. Donald Cowan, Jr., and Kathy E. Manning, for plaintiff-appellant.*

*Petree, Stockton and Robinson, by James H. Kelly, Jr., and Sharon L. Parker, for defendant-appellee.*

PARKER, Judge.

Plaintiff filed this declaratory judgment action seeking indemnification from defendant for a claim filed against plaintiff by defendant's employee, Charles J. Meeks. The trial court held that defendant is not obligated to indemnify plaintiff for any amount that Meeks is adjudged entitled to recover from plaintiff and is not liable to plaintiff for costs, expenses, or attorneys' fees incurred in defense of the Meeks lawsuit. We affirm.

On appeal, plaintiff contends that the trial court, sitting without a jury, erred in its conclusions of law (i) that the indemnity and hold harmless provisions printed on the back of the purchase order are against public policy, void, and unenforceable under G.S. 22B-1 because G.S. 22B-1 does not apply to contracts for the assembly and installation of equipment and because the contract provisions fall under the insurance contract exception to G.S. 22B-1; (ii) that the terms of the agreement set out in the purchase order were not in effect between the parties because there was no meeting of the minds; and (iii) that there was no express contract of indemnity between the parties under the Workers' Compensation Act at the time of Meeks' accident at plaintiff's plant. Defendant, on the other hand, contends the trial court erred in its conclusion of law that plaintiff did not intentionally waive its right to rely on the indemnity provisions printed on the back of the purchase order.

I.

The evidence presented at trial tended to show that plaintiff, a Wisconsin corporation, owned and operated a plant in Eden,

North Carolina. Sometime prior to 3 January 1985, plaintiff's engineering department sent out a bid package, including plans and specifications, to three contractors, one of which was defendant, requesting bids for "Job No. E93207," which involved the assembly and installation of a forty-foot conveyor system linking a depalletizer with an existing depalletizer and conveyor system. The bid submitted by defendant, dated 3 January 1985, was the low bid for the project.

Sometime prior to 29 January 1985, plaintiff's engineer in charge of the project informed defendant by telephone that it was the low bidder on the project and requested that defendant begin the project soon to minimize "down time" on the equipment. In the meantime, plaintiff's purchasing agent prepared a two-part "purchase order" form addressed to defendant and dated 18 January 1985. The following language was typed on the face of the form, in the column headed "Description":

> NOTE: The signed acceptance copy must be returned to the Miller Brewing Company, Eden Brewery, Eden, NC 27238-2099 to put this order into effect.

> Install conveyors on B-9 and B-10 depalletizer area to connect this equipment as requested and quoted from Job No. E93207.

> Contract price taken from Morgan Mechanical's quotation dated 1-3-85. All conditions and plant rules listed under the request for quotation to remain the same.

Also typed on the face of the purchase order form, in the columns headed "Quantity," "Unit of Issue," "Price/Unit," and "Total," was the following language:

> The Seller agrees to furnish to Buyer's Company prior to commencement of any work hereunder, evidence satisfactory to it, of a valid policy or policies of insurance covering: (1) Seller's liability for bodily injury and property damage within minimum limits of $250,000/$1,000,000 bodily injury, $1,000,000 property damage and (2) Liability arising under workmen's compensation laws, for any compensable injury to or death of any of the employees of the Seller or of any subcontractor under him while engaged in any work hereunder.

This provision shall not be construed as authorizing subcontracting of the work unless authorized in writing herein.

TOTALPRICE [sic] NOT TO EXCEED: $5,426.00

Below the above terms, in bold print, was the following statement:

THIS ORDER IS ACCEPTED ONLY UNDER THE CONDITIONS STATED ABOVE AND ON BACK HEREOF.

On the back of the purchase order form were fifteen paragraphs of "boilerplate" listing "conditions." One of these paragraphs stated the following:

9. Seller is to save harmless and indemnify Buyer from any and all judgments, costs, expenses, including attorneys' fees, and claims on account of damaged property or personal and bodily injuries (including death) which may be sustained by Seller, Buyer, Seller's or Buyer's employe [sic], or other persons arising out of or in any way connected with the work done or goods furnished under this P.O., and to provide adequate insurance (at least in the amount, if any, specified on the face of this P.O.) indemnifying Seller and Buyer against all such claims, and prior to the commencement of any work under this P.O. Seller is to provide Buyer with a certificate of such insurance which shall be non-cancellable during the pendency of the work.

Defendant's employees, Charles J. Meeks and Richard Watkins, began work on the project at plaintiff's plant on 29 January 1985. Meeks and Watkins worked eight hours on 29 January and returned to the plant at 7:00 a.m. the following day to continue work on the project. At approximately 9:00 a.m. on 30 January 1985, Meeks and Watkins left the plant building where they were working to pick up some additional materials. Meeks was thirty-five to forty feet from the door of the building and still on plaintiff's plant premises when he slipped and fell on some ice, causing him severe injuries. Meeks later filed suit against plaintiff alleging that plaintiff was negligent in venting steam from the plant onto an outside area causing ice to form on the walkway.

On 1 February 1985, plaintiff's purchasing office received the acceptance copy of the purchase order described above. The form

was signed by Jessie W. Morgan, president of defendant, and dated 30 January 1985. Both Mrs. Morgan and her husband, Jack Vaugh Morgan, defendant's secretary and treasurer, testified that they usually receive defendant's daily mail between 11:00 a.m. and 2:00 p.m. Mrs. Morgan testified that when she receives a purchase order, she dates and signs it the same day that it is received; she generally mails it back to the purchasing office on the same day or the next morning. Both Jessie and Jack Morgan testified that they had done work for plaintiff on numerous occasions prior to January 1985, and on each such occasion they had executed a purchase order like the purchase order described above; however, prior to the institution of this suit, neither had read the "boilerplate" conditions printed on the back of the purchase order.

## II.

The court below concluded that at the time of Meeks' accident, defendant was performing work for plaintiff "pursuant to an agreement to construct and/or alter an appliance" and that, therefore, any promise by defendant in connection with that agreement to indemnify or hold plaintiff harmless was against public policy, void, and unenforceable under G.S. 22B-1. We agree.

General Statute 22B-1 provides the following:

Any promise or agreement in, or in connection with, a contract or agreement relative to the design, planning, construction, alteration, repair or maintenance of a building, structure, highway, road, appurtenance or appliance, including moving, demolition and excavating connected therewith, purporting to indemnify or hold harmless the promisee, the promisee's independent contractors, agents, employees, or indemnitees against liability for damages arising out of bodily injury to persons or damage to property proximately caused by or resulting from the negligence, in whole or in part, of the promisee, its independent contractors, agents, employees, or indemnitees, is against public policy and is void and unenforceable. Nothing contained in this section shall prevent or prohibit a contract, promise or agreement whereby a promisor shall indemnify or hold harmless any promisee or the promisee's independent contractors, agents, employees or indemnitees against liability for damages resulting from the

sole negligence of the promisor, its agents or employees. This section shall not affect an insurance contract, workmen's compensation, or any other agreement issued by an insuror, nor shall this section apply to promises or agreements under which a public utility as defined in G.S. 62-3(23) including a railroad corporation as an indemnitee. This section shall not apply to contracts entered into by the Department of Transportation pursuant to G.S. 136-28.1.

In plaintiff's specifications for "Job No. E93207," the "Scope of Work" for the project was described as follows:

Install new conveyor between lines B9 and B10 depalletizers to connect the two depalletizers. Objective is to allow B10 line to be fed from B9 depalletizer. Approximately 38' of conveyor and five (5) drive motors to be energized from Modicon panel CP-10A. All conduit and wire to be furnished by contractor.

An "Engineering Service Manager" for plaintiff's Eden plant testified that the project required defendant to hook up ten-foot sections of conveyor and drill and anchor them to the concrete floor of the plant. Richard Watkins, the employee of defendant working with Meeks on the project, stated that "Job No. E93207" required the men to erect and install the conveyor as well as to install the conveyor's driving motors, chain, and side guards. The project also required some cutting of the new conveyor sections as well as cutting into the old existing conveyor where the two systems joined.

General Statute 22B-1 nowhere defines the terms that appear therein. However, according to general rules of statutory construction, "Nothing else appearing, the Legislature is presumed to have used the words of a statute to convey their natural and ordinary meaning." *In re Trucking Co.*, 281 N.C. 242, 252, 188 S.E. 2d 452, 458 (1972). Further, for guidance, "courts may, and often do, resort to dictionaries for assistance in determining the common and ordinary meaning of words and phrases." *State v. Martin*, 7 N.C. App. 532, 533, 173 S.E. 2d 47, 48 (1970).

Webster's Third New International Dictionary defines "construction" as "the act of putting parts together to form a complete integrated object." "Alteration" is defined as "the act or

action of altering," and "to alter" is defined as "to cause to become different in some particular characteristic (as measure, dimension, course, arrangement, or inclination) without changing into something else." "Appliance" is defined as "a tool, instrument, or device specially designed for a particular use." Synonyms of the word "appliance" are given as "implement" or "machine."

In light of the foregoing natural and common meanings of the terms in G.S. 22B-1, we conclude that "Job No. E93207" involved both the construction of a new appliance and the alteration of an existing appliance within the meaning of the statute. As such, any promise on the part of defendant to indemnify or hold plaintiff harmless made in or in connection with the agreement to perform "Job No. E93207" is invalid unless this agreement falls under an exception stated in the statute.

Plaintiff argues that G.S. 22B-1 is inapplicable because the terms of the purchase order place this agreement within the exception created by the statute for insurance contracts. We disagree.

General Statute 22B-1 states, "This section shall not affect an insurance contract . . . or any other agreement issued by an insuror . . . ." Plaintiff argues that the indemnity provision on the back of the purchase order for "Job No. E93207" falls within this exception because it requires defendant "to provide adequate insurance (at least in the amount, if any, specified on the face of this [purchase order]) indemnifying Seller and Buyer against all such claims [connected with the work done under the purchase order]." This contention is without merit.

Chapter 58 of the General Statutes governs contracts of insurance in this State. General Statute 58-3 defines a "contract of insurance" as "an agreement by which the insurer is bound to pay money or its equivalent or to do some act of value to the insured upon, and as an indemnity or reimbursement for the destruction, loss, or injury of something in which the other party has an interest." Application of this broad definition of the term "insurance contract" to G.S. 22B-1 would render G.S. 22B-1 meaningless because all promises or agreements purporting to indemnify or hold a party harmless against liability would be "insurance contracts" under G.S. 58-3. However, G.S. 58-29 further provides that

it is unlawful for any company to make any contract of insurance concerning any property, interest, or lives in this State, or with any resident in this State, except as authorized by the provisions of Chapter 58.

In construing a statute, the cardinal principle is that the intent of the Legislature is controlling. *State v. Fulcher*, 294 N.C. 503, 520, 243 S.E. 2d 338, 350 (1978). "A construction which will defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language." *In re Hardy*, 294 N.C. 90, 96, 240 S.E. 2d 367, 372 (1978). *See also Ballard v. Charlotte*, 235 N.C. 484, 487, 70 S.E. 2d 575, 577 (1952). Wherever possible, a statute should be given a construction that, in practical application, tends to suppress the evil the Legislature intended to prevent. *In re Hardy*, 294 N.C. at 96, 240 S.E. 2d at 372. In construing a statute, the court must normally adopt an interpretation that avoids bizarre or absurd consequences under the presumption that the Legislature acted in accordance with reason and common sense and did not intend untoward results. *Comr. of Insurance v. Automobile Rate Office*, 294 N.C. 60, 68, 241 S.E. 2d 324, 329 (1978).

To accept the interpretation urged by plaintiff in this case — that a clause requiring a contractor to obtain insurance covering the owner's indemnification renders valid an indemnity provision that is otherwise void under G.S. 22B-1 because it is an "insurance contract" or an "agreement issued by an insurer" — would, in practical application, render G.S. 22B-1 meaningless. In our view, the Legislature intended, by exempting insurance contracts or other agreements issued by an insurer, to prevent insurance policies which name the buyer of construction services as an insured from being invalidated. Therefore, we hold that the terms "insurance contract . . . or any other agreement issued by an insuror" refers to contracts of insurance and insurers as defined, authorized, and regulated by Chapter 58 of the General Statutes. Consequently, the indemnity and hold harmless provision printed on the back of the purchase order signed by the parties does not fall under the exception for contracts of insurance and is void under G.S. 22B-1.

Because we find the indemnity and hold harmless provisions printed on the back of the purchase order invalid under G.S. 22B-1, we find it unnecessary to address the remaining issues raised in this appeal. For the reasons stated, the judgment of the trial court is

Affirmed.

Judges ARNOLD and BECTON concur.