Pamela A. BARTON and David L. Barton, Plaintiffs,

v.

ALL–AMERICAN HOMES, LLC, All American Homes of North Carolina, LLC, Carson Furniture & Appliance Co., Inc., Carson Contracting Col, Joseph L. Carson, Jr., Douglas Bradley, Jr., d/b/a American Best Finished, Defendants,

v.

Carson Furniture & Appliance Co., and Joseph L. Carson, Third–Party Plaintiffs

v.

Douglas Bradley, Jr., d/b/a/ American Best Finished, Third–Party Defendant.

C.A. No. 2:06–CV–02295–PMD.

United States District Court, D. South Carolina, Charleston Division.

Oct. 21, 2008.

Chad Edward Poteat, Brown and Brehmer, Columbia, SC, for Third–Party Plaintiffs.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court upon motions for summary judgment filed by Defendants Carson Furniture & Appliance Co., Inc. ("Carson Furniture"), Carson Contracting Co. ("Carson Contracting") and Joseph L. Carson, Jr. ("Carson") [collectively "Carson Defendants"] against Defendants All–American Homes, LLC and All American Homes of North Carolina, LLC's [collectively All American] cross-claim for express contractual indemnification. For the reasons set forth below, the Carson Defendants' Motion for Summary Judgment is granted and, as such, the court need not and does not address Carson Contracting and Joseph Carson's additional Motion for Summary Judgment.

## BACKGROUND

### A. Facts

All American produces modular homes and sells them through independent builders. It enters into sales agreements with independent builders, which authorizes the builders to "purchase, install, resell, and service modular home units made under the All American or All American Homes name within" a certain territory. (Def. Carson Furniture's Mem. Supp. Summ. J. Ex. A.) All American NC entered into a Sales Agreement with Carson Contracting on August 19, 2003. (*Id.*) This agreement made Carson Contracting responsible for setting and constructing a modular home that William and Debra DeCosta, along with a Thomas Carlson [collectively "the DeCostas"], had purchased from All American. After manufacturing all of the components necessary for the DeCostas' modular home, All American delivered the home and its components to the DeCostas' lot in early June 2004. (Sayers Dep. 35:13.) Delivery of the home completed All American's involvement in the construction of the DeCostas' home (Carson Dep. 42:25–43:1), as the Carson Defendants controlled the procedures for setting, constructing, and completing the modular home (Sayers Dep. 34:19–35:10, 93:5–11).

The DeCostas' modular home had two levels, a basement floor and a first level. All American delivered the home without stairs installed because the Carson Defendants were responsible for installing them between the two levels. (Prescott Depo. 49:19–51:2.) While All American previously had a policy of nailing a three-quarter inch piece of plywood over the stairwell hole to prevent anyone or anything from falling through (Carson Vol. 137:2–22), by the time it delivered the DeCostas' home, it had adopted a new policy of delivering its homes with a piece of plastic stapled onto a wooden band over the stairwell's opening (Carson Vol. 134:18–35:19) and positioning a block of wood on the floor to seal the door that opened into the stairwell hole (Sayers Dep. 130:12–131:6).

The plaintiffs, Pamela and David Barton, owned a log cabin near the DeCostas' home and apparently were asked by the DeCostas to "look after" the construction of this home since the DeCostas resided in Connecticut. (Am. Compl. at ¶ 17.) On July 29, 2004, the Bartons found the front door to the DeCostas' modular home open but did not observe any contractors around. (*Id.* at ¶ 18.) The Bartons decided to check the house out for vandalism, and during this process, Mrs. Barton entered the home, opened the door leading to the stairwell hole, stepped onto the plastic covering the hole, and fell approximately ten feet to the basement floor. Although the Carson Defendants had worked on the home for approximately two months prior to Mrs. Barton's entry, they had yet to install the stairs between the basement and first floor. It remains unclear to the court what exactly Mrs. Barton stepped on, as the deposition testimony of Joseph Carson mentioned above indicated that All American delivered the modular home with a piece of plastic covering the stairwell hole, Mrs. Barton's amended complaint referred to it as a "white plastic covering" (Am. Compl. at ¶ 20), and the Carson Defendants' memorandum in support for summary judgment refers to the plastic as a "sheet covering the floor." (Carson Defs.' Mem. Supp. Summ. J. at 3). Regardless, no dispute exists over the fact that Mrs. Barton fell through the stairwell hole created by All American and that the fall occurred during the Carson Defendants' installation of the DeCostas' home, but before its completion. Mrs. Barton suffered serious injuries from this fall and brought suit, along with her husband, against both All American and the Carson Defendants.

The Bartons alleged that All American negligently designed, manufactured, and delivered the modular home without any barrier or guard over the stairwell opening and failed to place a warning as to the condition. (Am. Compl. at ¶ 25(1).) Against the Carson Defendants, they alleged a negligent failure to place a barrier or guard over the opening, failure to place any warning as to the condition or barricade the hazardous condition, and that they created a trap by leaving the modular home open and unlocked despite the dangerous condition. (Am. Compl. at ¶ 25(2).) The Bartons also alleged premises liability, breach of implied and express warranties, loss of consortium, and negligent infliction of emotional distress against both All American and the Carson Defendants. (Am. Compl.) Both All American and the Carson Defendants ultimately settled the Bartons' actions against them. The Carson Defendants settled with the Bartons for $750,000 on March 17, 2008. (Carson Defs. Mem. Supp. Mot. Summ. J. Ex. B.) The release discharged the Carson Defendants from any and all claims the Bartons had against them and also required the Bartons to forgo any claims they had against All American by way of derivative liability for the acts or omissions of the Carson Defendants. (*Id.*) All American settled with the Bartons on June 10, 2008 for approximately $2 million. All that remains before the court are All American's and the Carson Defendants' cross-claims against each other for indemnification.

The Carson Defendants moved for summary judgment on July 8, 2008, asking the court to find that All American may not recover indemnification from them as a matter of law. The Sales Agreement between All American and the Carson Defendants contained the following indemnification language, which forms the basis of All American's cross-claim: "Builder will defend, indemnify and hold harmless Seller from any and all claims that originate from the excavation and land condition, backfilling and grading, footings, basement floors, crawlspace, foundation walls, HVAC system, and any other construction and/or

materials not provided by All American Homes." (*Id.* at 5.)

### B. Carson Contracting and Joseph Carson's Motion for Summary Judgment

Carson Contracting and Joseph Carson move for summary judgment on the basis that neither of them are a party to the Sales Agreement which forms the basis of All American's indemnity claim. These defendants assert that Carson Furniture and All American NC constitute the only two parties to the contract; therefore, All American does not have a valid claim for express indemnity against either of them. Thus, they move the court to grant summary judgment in their favor.

### C. Carson Defendants' Motion for Summary Judgment

The Carson Defendants, collectively, also move for summary judgment on four other grounds. First, they argue that the indemnification language in the Sales Agreement does not entitle All American to indemnification because All American's "construction and/or materials" caused the Bartons' injuries rather than any work done by the Carson Defendants. Second, they contend that All American had direct liability to the Bartons based on the improper and defective design, manufacture, and delivery of the DeCostas' modular home that is separate and independent from any liability All American may have had as a result of the acts or omissions of the Carson Defendants. Therefore, All American may not recover indemnification for liability resulting from its own acts and omissions. Third, they argue that because all defendants are in *pari delicto,* rather than derivatively liable, All American cannot recover indemnification. Finally, the Carson Defendants assert that All American's settlement with the plaintiffs constitutes a voluntary payment barring their indemnification cross-claim.

### LEGAL STANDARD FOR SUMMARY JUDGMENT

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548.

### DISCUSSION

#### A. Supplemental Jurisdiction

Although no party has addressed the issue, the court is "duty-bound to clarify

its subject matter jurisdiction because questions of subject matter jurisdiction concern the court's very power to hear the case." *Long v. Silver*, 248 F.3d 309, 314 (4th Cir.2001). The Carson Defendants removed this action to federal court on August 15, 2006. On that date, the court maintained subject matter jurisdiction over the Bartons' suit as complete diversity existed between them, as plaintiffs, and all of the Defendants and the amount in controversy exceeded $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). Furthermore, the court had supplemental jurisdiction over both the Carson Defendants' and All American's cross-claims for express indemnification against each other as the claims arose out of the occurrence that was the subject matter of the Bartons' original action. Fed.R.Civ.P. 13(g); 28 U.S.C. § 1367(a).

Since removal of this action, the Bartons have settled their disputes with all of the Defendants. Their dismissal has left the Carson Defendants' and All American's cross-claims against each other for express indemnification as the only remaining dispute, and complete diversity does not exist between these parties. All three of the Carson Defendants are alleged to either be organized under the laws of North Carolina or are domiciled in that state, while All American Homes of North Carolina is a North Carolina limited liability company with its principal place of business in the state. Regardless of the lack of complete diversity and the fact that only a state-law contractual claim remains, the court exercises its discretion to retain supplemental jurisdiction over this matter, after considering the convenience and fairness to the parties and judicial economy. *Shanaghan*

*v. Cahill*, 58 F.3d 106, 110 (4th Cir.1995) (indicating that federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action is dismissed).

## B. *The Sales Agreement's Indemnification Language*

The Carson Defendants base their first argument for summary judgment on the indemnification language agreed upon by the parties in the Sales Agreement. In *Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, the North Carolina Supreme Court recently articulated the standard for reviewing indemnification agreements under North Carolina law [1]:

> An indemnity contract obligates the indemnitor to reimburse his indemnitee for loss suffered or to save him harmless from liability. The primary purpose in construing a contract of indemnity is to ascertain and give effect to the intention of the parties, and the ordinary rules of construction apply. A court must construe the contract as a whole and an indemnity provision must be appraised in relation to all other provisions. A contract that is plain and unambiguous on its face will be interpreted by the court as a matter of law. When an agreement is ambiguous and the intention of the parties is unclear, however, interpretation of the contract is for the jury. An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations. Thus, if there is uncertainty as to what the agreement is between the parties, a contract is ambiguous.

1. North Carolina law governs this dispute as the parties agreed that it would in paragraph 22 of their Sales Agreement. *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 602 (4th Cir.2004) ("[C]ontracting parties in North Carolina are entitled to agree that a particular jurisdiction's substantive law will govern their contract, and such a provision will generally be given effect.").

*Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 362 N.C. 269, 273, 658 S.E.2d 918, 921 (2008) (internal citations omitted). The Sales Agreement between All American and the Carson Defendants contained the following indemnification language, which forms the basis of All American's cross-claim against the Carson Defendants:

> Builder will defend, indemnify and hold harmless Seller from any and all claims that originate from the excavation and land condition, backfilling and grading, footings, basement floors, crawlspace, foundation walls, HVAC system, and *any other construction and/or materials* not provided by All American Homes.

(All American Answer and Cross-cl. at ¶ 85) (emphasis added). The crux of this dispute turns on the meaning of "any other construction." The Carson Defendants assert that the indemnity provision is plain and unambiguous. They believe a plain meaning of this language reveals that they do not have to indemnify All American for any of the Bartons' damages caused by All American's design, manufacture, or delivery of the home. To them, the language "any other construction and/or materials not provided by All American Homes" makes them responsible only for claims arising from any "additional work" they provided to the modular home that did not make up the original design. Since All American settled the Bartons' claims against them for injuries arising from the stairwell hole that All American designed, manufactured, and provided, the Carson Defendants believe All American does not have a right to indemnification under the Sales Agreement's language.

All American asserts that the court should evaluate the indemnification language along with the contract as a whole. Therefore, All American cites to other provisions of the Sales Agreement which they believe, when read along with the indemnification language, negates the Carson De-

fendants' argument. First, they reference the caption of the Sales Agreement which indicates that All American appointed the Carson Defendants to "install" modular home units manufactured by them. Secondly, All American references paragraph eight of the Sales Agreement dealing with when the Carson Defendants' purchases of All American's modular homes would be payable. In particular, All American directs the court's attention to the "Title and risk of loss" provision which states: "Title and risk of loss for Products pass to [The Carson Defendants] ... [for] *Products which [All American] delivers and sets onto [the Carson Defendants'] foundation*—upon payment and the affixing of the Product to the [Carson Defendants'] foundation." All American adds special emphasis to the "affixing of the Product to the [Carson Defendants'] foundation" language because it believes this language, combined with the "install" language from the Sales Agreement's caption, demonstrates that the parties "intended for activities related to installation of a modular home to come within the provisions of their sales agreement." (All American Mem. Opp. at 8.) Finally, they cite to *Black's Law Dictionary's* definition of the term "construction." It defines the term as "[t]he act of building by combining or arranging parts or elements; the thing so built." *Black's Law Dictionary* 332 (8th ed. 2004). All American argues that applying the plain and ordinary meaning to this term in conjunction with an understanding of the referenced provisions of the Sales Agreement makes the Carson Defendants responsible for any obligations arising from their negligent "acts or omissions" no later than the point that All American delivered the modular home to the installation site.

Recognizing that All American both drafted the contract and asserts it in their cross-claim, the court must strictly con-

strue the indemnity clause against them. *Hoisington v. ZT–Winston–Salem Assocs.,* 133 N.C.App. 485, 494, 516 S.E.2d 176, 183 (1999), *Silvers v. Horace Mann Ins. Co.,* 324 N.C. 289, 295, 378 S.E.2d 21, 25 (1989). In light of this strict construction requirement, the court has a hard time accepting All American's strained interpretation of the indemnification provision based on a reading of the language, itself, and in conjunction with the other provisions of the Sales Agreement. The "Title and risk of loss" provision of the Sales Agreement cited by All American defines when the risk of loss passes to the Carson Defendants, effectively obligating them, rather than All American, to bear the costs and expenses for damage to or destruction of a modular home. *Black's Law Dictionary* 1353 (8th ed. 2004). Although All American attempts to convince the court that this provision evidences the parties' intent that the Carson Defendants' "obligations" began when All American affixed the modular home to the foundation, the only obligation that this provision concerns arises exclusively between All American and the Carson Defendants regarding the costs and expenses for damage to or destruction of a modular home and is wholly unconnected with any prospective liability to a third party uninvolved with the Sales Agreement. Furthermore, All American's argument that the first provision of the Sales Agreement indicates what activities the indemnification provision applies to, since it states that All American appointed the Carson Defendants to "install" its modular homes, seems insignificant in light of the language of the indemnification provision itself, which provides what activities of the Carson Defendants it applies to. As previously noted, the indemnification provision applies to obligations arising out of the "excavation and land condition, backfilling and grading, footings, basement floor, crawlspace, foundation walls, HVAC sys-

tem, and any other construction and/or materials not provided by All American."

After considering the entire Sales Agreement, the language of the indemnification provision, and the arguments of the parties, the court finds the indemnification language "any other construction and/or materials" unambiguous. While neither party cited any North Carolina law regarding the interpretation of the term "construction," the court's research uncovered that other courts faced with interpreting this term have found it unambiguous as well, albeit mostly in an insurance contract context. *See, e.g., Myers v. Merrimack Mutual Fire Ins. Co.,* 788 F.2d 468, 472 (7th Cir.1986) (disagreeing that the term "construction" was ambiguous); *American States Ins. Co. v. Edgerton,* No. 07–239, 2008 WL 4239000 at *7 (D.Idaho 2008) (finding the term "construction" unambiguous and that it referred to the building of a new structure); *Muirhead v. Pilot Properties, Inc.,* 258 So.2d 232, 233 (Miss.1972) (noting that, in the ordinary sense, "construction" means "to build or erect something which therefore did not exist"). In *Miller Brewing Co. v. Morgan Mechanical Contractors, Inc.,* the North Carolina Court of Appeals recognized *Webster's Third New International Dictionary's* definition of "construction," which is "the act of putting parts together to form a complete integrated object." *Miller Brewing Co. v. Morgan Mechanical Contractors, Inc.,* 90 N.C.App. 310, 315, 368 S.E.2d 438, 441 (N.C.Ct.App.1988). As All American noted in its memorandum, *Black's Law Dictionary* defines the term as "[t]he act of building by combining or arranging parts or elements; the thing so built." *Black's Law Dictionary* 332 (8th ed. 2004). The North Carolina Supreme Court has held that the "use of the plain, ordinary meaning of a term is the preferred construction," *C.D. Spangler Constr. Co. v. Industrial Crankshaft & Eng. Co.,* 326

N.C. 133, 151, 388 S.E.2d 557, 568 (1990) (citation omitted), and these dictionary definitions of "construction" suggest that the Carson Defendants had to indemnify All American only for claims arising from acts of additional work they did to transform All American's framework into a completed home. *Herring v. Liner,* 163 N.C.App. 534, 538, 594 S.E.2d 117, 120 (N.C.Ct.App. 2004) (noting that courts should look to dictionary definitions to ascertain the ordinary meaning of a word).

While All American believes such an interpretation would effectively read the conjunction "and/or" out of the indemnification provision, the court disagrees. The structure and phrasing of the indemnification provision also provides insight into the proper meaning of the term "construction." North Carolina law recognizes the cannon of construction *ejusdem generis* which prescribes that "where general words follow a designation of particular subjects or things, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designations and as including only things of the same kind, character and nature as those specifically enumerated." *Delconte v. State,* 313 N.C. 384, 391, 329 S.E.2d 636, 641 (1985) (quoting *State v. Fenner,* 263 N.C. 694, 697, 140 S.E.2d 349, 352 (1965)). Although North Carolina courts have primarily used this principle for statutory construction, *Wilson v. Ventriglia,* 172 N.C.App. 175, 2005 WL 1804315, at *5, No. 04–885, 2005 N.C.App. LEXIS 1476, at *13 (N.C.Ct.App.2005) (declining to apply *ejusdem generis* to construe a prenuptial agreement given the facts of the case), the court believes its application in this instance helps reinforce the intended plain meaning of the indemnification provision. The specific terms "excavation and land condition, backfilling and grading, footings, basement floors, crawlspace, foundation walls, [and] HVAC system" precede the term "and any other

construction and/or materials not provided by All American Homes." This suggests that "any other construction" would only include other additional acts of building or development which the Carson Defendants undertook to complete the installation of the modular home that All American provided. The reading of the term "construction," after an enumeration of specific installation responsibilities of the Carson Defendants, seems to negate All American's argument that the Carson Defendants' omissions fall under this language, at least when "omission" is used in the sense of the Carson Defendants not working on a particular component of the home at all.

In considering the definitions and phrasing of the indemnification language, along with the contract as a whole, the court also notes that All American used almost identical phrasing in two other provisions of its Sales Agreement with the Carson Defendants. In paragraph 15 of the agreement, language identical to the indemnification provision is used to make the Carson Defendants solely responsible for "any conditions that may arise in or impact upon" the modular home provided by All American "that originate from the excavation and land condition, backfilling and grading, footings, basement floors, crawlspace, foundation walls, HVAC system, and all other construction and or materials not specifically provided by All American Homes." In paragraph six of the agreement, almost identical language to that of the indemnification provision is also used to make the Carson Defendants solely responsible for all "obligations" arising from the Carson Defendants' work on the modular home. The one difference is that paragraph six's clause uses the wording *"any and all additional work* and/or material" not specifically to be provided by All American rather than the *"any other construction* and/or material" language which

appears in the indemnification provision and paragraph 15. While the interchangeable use of a phrase that proves consistent with the plain meaning of "construction" may be merely coincidental, it, at the least, further supports the court's understanding of the intended spirit behind the underlying obligations of both parties: the Carson Defendants were responsible for the work it did to finalize installation of the modular home, and All American was responsible for the work it provided.

While All American argues that the claims in the underlying action originated from the Carson Defendants' "acts and omissions," All American has not brought to the court's attention any "acts" undertaken by the Carson Defendants that constituted "construction" to the stairwell hole that Mrs. Barton fell through. If the Carson Defendants had either begun or already finished constructing stairs and, through their work, created a hazard that did not already exist when All American delivered the modular home, maybe those facts would change the result. The undisputed material facts of this case, however, show that, although the Carson Defendants controlled the premises of the DeCostas' home, Mrs. Barton was injured solely by believing she could step on the piece of plastic provided by All American that covered the stairwell hole created by All American, and nothing indicates the Carson Defendants had done any work on that specific component of the modular home. To accept All American's argument that the indemnification language places responsibility on the Carson Defendants for obligations arising after the modular home was affixed to the foundation at the installation site treads very close to insulating them from any liability originating from a negligent design of the modular home, and North Carolina law prohibits such exculpatory provisions. *See* N.C. Gen.Stat. § 22B–1 (voiding any agreement in a construction contract that purports to indemnify the promisee against liability for damages arising out of bodily injury to persons resulting from the negligence, in whole or in part, of the promisee). In essence, it would require the court to construe the indemnification provision as a timeline for an automatic right to indemnification, i.e., after the modular home was affixed to the foundation, rather than an interpretation that the parties faced responsibility for their respective negligent acts. While All American may have contemplated securing a right to indemnification for any claims arising from a condition of the modular home that it believes the Carson Defendants had control over and could have prevented, the plain meaning of the language of the Sales Agreement entered into with the Carson Defendants does not afford them this protection. Therefore, the court grants Carson Furniture, Carson Contracting, and Joseph Carson's motion for summary judgment as to All American's cross-claim for express indemnification.

### C. The Carson Defendants' Remaining Arguments and Carson Contracting and Joseph Carson's Additional Motion for Summary Judgment

Since the court grants the Carson Defendants' motion for summary judgment based on the indemnification language in the Sales Agreement, it does not address the remaining arguments made by them as to why they do not owe All American indemnification. Since this order effectively dismisses All American's claim for express indemnification against Carson Contracting and Joseph Carson, the court also does not rule on their additional motion for summary judgment, as this order renders it moot.

### CONCLUSION

For the foregoing reasons, the court grants Carson Furniture, Carson Con-

tracting, and Joseph Carson's motion for summary judgment. The court does not rule on Carson Contracting and Joseph Carson's additional motion for summary judgment as this order dismisses the cross-claim against them.

**AND IT IS SO ORDERED.**