**Albright v. Weinig Inc.**

*Kenneth F. Fulginiti, Thomas J. Duffy Jr.* and *Patrick J. Keenan,* for plaintiff.

*Brian J. Madden, John J. Hare, Warren E. Voter* and *James H. Rohlfing,* for defendants.

CARRAFIELLO, *J.,* August 17, 2010—Defendant, T. Baird McIlvaine Inc. d/b/a TBM Hardwoods Inc., employer of plaintiff Albright, appeals from an order of the Philadelphia Court of Common Pleas dated April 26, 2010 and entered April 30, 2010, denying appellant's post-trial motion for judgment n.o.v. in the above captioned matter.

## FACTUAL AND PROCEDURAL HISTORY

On May 14, 2007, the plaintiff, Jason Albright, commenced an action against defendants, Michael Weinig Inc. (Weinig) and Michael Weinig AG (Weinig AG) after sustaining injuries while operating a Unimat 1000 Moulder machine (U1000). Weinig is a Mooresville, North Carolina based sales and service corporation that sold, installed and serviced the U1000. Weinig AG is a German corporation and manufacturer of the U1000. Plaintiff's employer and purchaser of the U1000, T. Baird McIlvain Inc. d/b/a TBM Hardwoods Inc. (TBM), was also joined as a defendant based on an indemnity provision in the purchase order. Before trial, plaintiff settled with Weinig for $1,950,000.

The purchase order between TBM and Weinig, dated November 21, 2002, contained an indemnification provision in which TBM agreed to "hold harmless, defend,

and indemnify [Weinig] . . . if [TBM], its agents, employees, successors or assigns have been contributorily negligent or have failed to implement and abide by all applicable operating instructions, safety instructions, training recommendations, manuals, warnings, laws or regulations." The parties agreed that the purchase order is governed by North Carolina law.

The parties stipulated that the U1000 did not contain adequate warning labels when it left the Weinig AG manufacturing plant or when Weinig sold it to TBM and that both Weinig and Weinig AG were negligent and their negligence was a legal cause of plaintiff's injury. N.T. 6/30/09, pp. 53-54.

When the U1000 arrived at TBM's plant, TBM employees removed it from its packaging and set up the machine's electrical and dust collection systems. Between April 7 and 10, 2003, Rob Scaffe, a Weinig technician, installed the U1000 at TBM's facility in Hanover, Pennsylvania, Scaffe spent a few hours cleaning, leveling, and calibrating the U1000. He spent the remainder of his time at TBM training employees to use the U1000. TBM did not provide plaintiff with safety training related to the use of the U1000.

Plaintiff's injuries occurred on October 7, 2006 when, following the instructions of a TBM supervisor, plaintiff inserted a "push stick" into the U1000 to clear wood lodged inside the machine. The push stick was a smaller size than the blank stock for which the U1000 was set up. Because the first push stick did not clear the machine, plaintiff's supervisor instructed him to insert a second push stick. When plaintiff did so, the first push stick ejected from the U1000 and struck plaintiff in the groin, causing his injuries.

Immediately preceding trial, Weinig settled its claim against plaintiff. On June 29 and 30, 2009, a bench trial commenced on Weinig's indemnification claim against TBM and on TBM's claims for contribution and indemnification against Weinig AG. On December 12, 2009, after permitting the parties an opportunity to review the trial notes of testimony and file proposed findings and conclusions with the court, the court found for Weinig on its claim for indemnification against TBM in the amount of $1,950,000 and against TBM on its claims for contribution and indemnification against Weinig AG.

TBM then filed a timely post-trial motion requesting judgment n.o.v. After submissions of briefs and a hearing, the court denied TBM's motion for judgment n.o.v. and TBM's appeal followed.

## STATEMENT OF ISSUES

Pursuant to the court's order to file a concise statement of errors complained of on appeal, defendant TBM stated three issues that have been restated so we may facilitate their discussion. They are as follows:

"(1) Did the court err in granting Weinig's contractual claim for indemnity against TBM where Weinig installed the U1000 at TBM's facility?

"(2) Did the court err in granting Weinig's contractual claim for indemnity against TBM where the purchase order specifically indemnified Weinig against claims brought by TBM employees?

"(3) Did the court err in denying TBM's claim for contribution against Weinig AG where both Weinig AG and TBM were at fault for plaintiff's injuries?

"(4) Did the court err in denying TBM's claim for common-law indemnity against Weinig AG?"

## LEGAL DISCUSSION

Each of defendant TBM's issues raised in its Pa.R.A.P. 1925(b) statement as restated, is discussed below:

### (1) *Did the Court Err in Granting Weinig's Contractual Claim for Indemnity Against TBM Where Weinig Installed the U1000 at TBM's Facility?*

The purchase order contained a choice of law provision mandating that its terms and conditions were to be governed by the laws of North Carolina. Weinig and TBM agreed that the choice of law provision was valid. The purchase order was duly executed by the parties and has been accepted as a binding contract between them.

Under North Carolina General Statute §22B-1, indemnity provisions are not permitted "in connection with, a contract or agreement relative to the design, planning, construction, alteration, repair or maintenance of a building, highway, road, appurtenance or appliance, including moving, demolition and excavating connected therewith . . . ." Under North Carolina law, whether a contract is a construction contract is determined by the fact-finder's review of the actions taken by the party seeking protection of the indemnity provision. See *Miller Brewing Co. v. Morgan Mech. Contractors Inc.,* 368 S.E.2d 438, 440-41 (N.C. Ct. App. 1988) (discussing factors in determining whether the contract was a construction contract).

In *Miller,* the contract required that the defendant "install" a new conveyor at the plaintiff's facility to con-

nect two separate depalletizers. *Id.* at 441. Work performed by the defendant included adjoining 10-foot sections of the conveyor and drilling and anchoring them to the concrete floor of the plant. *Id.* Defendant's employees also had to erect and install the conveyor and install the conveyor's driving motors, chain, and side guards. *Id.* To join the two pre-existing systems, the defendant had to cut into the old existing conveyor and cut some of the new conveyor sections. *Id.* The *Miller* court concluded that an indemnification provision in a purchase order was not valid under N.C.G.S. §22B-1 because the work performed by the defendant amounted to both the construction of a new appliance and the alteration of an existing appliance. *Id.*

Unlike the work performed by the defendant in *Miller,* Weinig did not construct, alter, or repair the U1000. Weinig AG, a separate entity who was not a party to the contract, designed and manufactured the U1000. The U1000 arrived at TBM's plant fully constructed where TBM employees removed it from its packaging and installed electrical and dust collection systems. Weinig's technician merely cleaned, leveled, and calibrated the U1000—work that did not amount to changing the machine's original characteristics.

Further, N.C.G.S. §22B-1 does not include the word or concept of "installation" as an activity for which indemnity provisions are prohibited. If the North Carolina legislature had intended to void indemnity provisions in contracts including installations, it would have used the word "installation" or enunciated a concept which has a similar meaning. It did neither.

Therefore, the work actually performed by Weinig to "install" the U1000 does not constitute the construction,

alteration, or repair required to void the indemnity provision under N.C.G.S. §22B-1.

### (2) *Did the Court Err in Granting Weinig's Contractual Claim for Indemnity Against TBM Where the Purchase Order Specifically Indemnified Weinig Against Claims Brought by TBM Employees?*

The Pennsylvania Workers' Compensation Act, 77 P.S. §481(b), contains an exclusivity provision, giving employers immunity from suits brought by their employees against third parties. The Act states that if "injury or death to an employe is caused by a third party, then such employe . . . may bring their action at law against such third party, but the employer . . . shall not be liable to a third party for damage contribution, or indemnity." 77 P.S. §481(b). Employers will, however, be liable for damages, contribution, or indemnity for suits brought by their employees against third parties when it is "expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action." *Id.*

Pennsylvania courts have found that general indemnity language in a contract does not remove the bar to recovery created by the Act's exclusivity provision. *Bethlehem Steel Corp. v. MATX Inc.,* 703 A.2d 39, 43 (Pa. Super. 1997) (citing *Bester v. Essex Crane Rental Corp.,* 422 Pa. Super. 178, 184, 619 Aid 304, 307 (1993), *appeal denied,* 539 Pa. 641, 651 A.2d 530 (1994)). Additionally, "[t]he intent to indemnify against claims by employees of the alleged indemnitor must clearly appear from the terms of the agreement." *Id.* But, "if the indem-

nification agreement is clear and includes indemnification in the event of either the indemnitee's or the employer's own negligence, its enforceability does not require that the employer, in addition, expressly and in haec verba waive the immunity provided by section 481(b) of the Workmen's Compensation Act." *Bester,* 422 Pa. Super. at 185, 619 A.2d at 307 (citing *Szymanski-Gallagher v. Chestnut Realty,* 409 Pa. Super. 323, 597 A.2d 1225 (1991)).

TBM maintains that the indemnity language in the purchase order neither clearly indemnifies Weinig for claims brought by TBM's employees nor expressly waives immunity under 77 P.S. §481(b). The purchase order, however, specifically indicates that TBM will indemnify Weinig for "claims, causes of action, suits, proceedings, costs, fees, damages . . ." brought "by the [TBM] or its agents, employees, insurance carriers . . . ." The purchase order also states that:

"[TBM] further agrees that it shall be solely liable for and will hold harmless, defend, and indemnify [Weinig] . . . if [TBM], its agents, employees, successors or assigns have been contributorily negligent or have failed to implement and abide by all applicable operating instructions, safety instructions, training recommendations, manuals, warnings, laws or regulations."

Therefore, although the purchase order did not contain specific verbiage waiving the Workers' Compensation Act immunity by name, the terms clearly indicate that TBM agreed to indemnify Weinig against claims brought by TBM employees—especially those claims where TBM and/or its employees were contributorily negligent.

*(3) Did the Court Err in Denying TBM's Claim for Contribution Against Weinig AG Where Both Weinig AG and TBM Were at Fault for Plaintiff's Injuries?*

Under Pennsylvania law, the right to contribution only exists among joint tort-feasors. 42 Pa.C.S. §8324. The term "joint tort-feasors" is defined as "two or more persons jointly or severally liable *in tort* for the same injury to persons or property . . . ." 42 Pa.C.S. §8322. (emphasis added)

TBM argues that, because the court found that TBM was contributorily negligent, it is entitled to contribution from Weinig AG. But, Weinig's claim for indemnification against TBM is contractual, not a tort. The court found only that TBM was "contributorily negligent," not that it was a "joint tort-feasor." Therefore, because TBM has not been found liable in tort, is not entitled to contribution.

*(4) Did the Court Err in Denying TBM's Claim for Common-Law Indemnity Against Weinig AG?*

Common-law indemnity is an equitable doctrine giving relief to a party without active fault who has made a payment of damages because of a legal obligation. *Builders Supply v. McCabe,* 366 Pa. 322, 325, 77 A.2d 368, 370 (1951). Pennsylvania courts have held that an employer's immunity from legal liability in tort does not prevent the finder-of-fact from determining that the employer was "at fault" for the injuries of its employees. See *e.g., Tsarnas v. Jones & Laughlin Steel Corp.,* 262 Pa. Super. 417, 425, 396 A.2d 1241, 1244 (1978) ("[N]othing in [77 P.S. §481(b)] precludes a defendant from de-

fending at trial on the theory that the conduct of the plaintiff's employer was the legal cause of the injury.").

TBM failed to provide plaintiff with safety training before he operated the U1000. Also, in clear violation of oral and written safety warnings, plaintiff's supervisor instructed that plaintiff clear the U1000 of lodged wood by inserting "push sticks" of a smaller size than the blank lumber meant for the U1000, thereby greatly increasing plaintiff's risk of grievous bodily injury. After considering these factors, the court ultimately determined that TBM was negligent in its operation of the U1000 and that its negligence was a cause of plaintiff's injuries.

TBM insists that it is entitled to indemnification from Weinig AG, whose negligence was also a cause of plaintiff's injury, because it "cannot be both actively negligent and immune from liability." (TBM's statement of errors complained of on appeal 2.) TBM contends that, if it is immune from suit under Pennsylvania Workers' Compensation Act, it cannot be found actively negligent for plaintiff's injuries and, thus, is entitled to indemnification from Weinig AG. However, as previously discussed the Pennsylvania Workers' Compensation Act does not protect TBM from a contractual claim such as that contained in the indemnity provision of the purchase order which specifically indemnifies Weinig for suits such as the one brought here.

As an additional or alternative ground for denying TBM's indemnity claim, Weinig has suggested that, because TBM has not paid on the judgment, any claim for indemnity is not ripe. We would agree because, under Pennsylvania law, a party can only bring a common-law indemnity claim after it has paid the judgment. *McClure*

*v. Deerland Corp.,* 401 Pa. Super. 226, 232, 585 A.2d 19, 23 (1991). This court's decision, however, was based upon the factual decision that TBM was at fault for plaintiff's injuries.

## CONCLUSION

It is understandable that TBM feels that it should not have to bear the full weight of plaintiff's recovery, especially because there is no contest that all parties were to some degree and in some fashion at fault.

However, there is also no contest that TBM, as a sophisticated purchaser, agreed to assume that full liability when it executed the purchase order. The court was obliged to give due deference to this contract entered into at arms length by these sophisticated parties.

Therefore, the trial court appropriately denied defendant TBM's motion for judgment n.o.v.